James W. Dabney (JD-9715)
Julie E. Kamps (JK-6041)
Ron Lazebnik (RL-1984)
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
(212) 859-8000
Attorneys for Plaintiff
AB Electrolux

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

AB ELECTROLUX,

                       Plaintiff,

           - against -

BERMIL INDUSTRIES CORPORATION, AUTARKIC
HOLDINGS, INC., and NEAL MILCH,

                       Defendants.

-----------------------------------------------------------x

ECF CASE

07 Civ. 199 (LAK)

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## ORDER TO SHOW CAUSE AND EXPEDITED DISCOVERY

AB Electrolux ("Electrolux") respectfully moves this Court, pursuant to Fed. R. Civ. P. 26(d), 34(b), and 65(a), for an Order directing defendants to appear to show cause why preliminary injunctive relief should not be granted on Electrolux's second claim for relief under 15 U.S.C. § 1125(a), and granting limited expedited discovery.

As is set forth in the Complaint filed January 10, 2007, this is an action for trademark infringement and unfair competition. Electrolux is a leading manufacturer of professional laundry products including washing machines, tumble dryers, ironers, and related apparatus and spare parts. For more than forty (40) years, Electrolux has distributed professional laundry products in United States commerce under the trademark WASCOMAT. Electrolux is the owner

of incontestable U.S. Reg. No. 727,703 issued February 20, 1962, for the trademark WASCOMAT as applied to "washing machines" (see Exhibit 1 hereto; Complaint ¶ 7).

By reason of more than forty (40) years of continuous and substantially exclusive use, advertising, and promotion, the WASCOMAT mark has come to symbolize highly valuable goodwill and selling power in the field of professional laundry products. Since 1962, Electrolux has sold and distributed upwards of $750,000,000.00 in WASCOMAT professional laundry products in United States commerce (Complaint ¶ 8).

Defendant Bermil Industries Corporation ("Bermil") is Electrolux's exclusive distributor of WASCOMAT-branded products in the United States and Canada. Electrolux and Bermil are parties to a written supply agreement dated July 12, 1960 (the "Distributor Agreement"), which Distributor Agreement has been amended from time to time and runs until December 31, 2010 (Complaint ¶ 9). As amended June 6, 1979, the Distributor Agreement between Electrolux and Bermil provides in part (see Exhibit 2 hereto; Complaint ¶ 10):

> Bermil acknowledges that AB Electrolux has a valid registration on the name Wascator and Wascomat and combinations thereof as filed with the patent office.
>
> Bermil agrees that in using the said trade mark it will not represent in any way that it has any right or title to the ownership thereof or to any registration thereof and during the life of this agreement Bermil will use the said trade mark to the degree necessary to protect and preserve AB Electrolux' rights thereto in the US and Canada.

**Defendants' Threatened Infringement**

On or about December 20, 2006, defendant Bermil, using "Wascomat Laundry Equipment" letterhead, issued a communication to one or more United States dealers in WASCOMAT professional laundry products, which communication stated in part (see Exhibit 3 hereto; Complaint ¶ 11):

2

> Bermil Industries will be introducing in January a range of Wascoclean-branded tumble dryers manufactured for us by American Dryer Corporation, which will be available for immediate delivery in coin, debit card, and OPL configurations. These Wascoclean dryers are an addition to the Wascomat-branded TD dryers, which of course remain available as before.

The above-quoted communication by Bermil was issued without Electrolux's knowledge or approval. Electrolux has no knowledge of any arrangement between Bermil and American Dryer Corporation with respect to the manufacture or distribution of "Wascoclean-branded tumble dryers" (Complaint ¶ 12). Upon information and belief, defendants adopted the mark WASCOCLEAN in bad faith and with specific intent to appropriate goodwill associated with the WASCOMAT mark owned by Electrolux (Complaint ¶ 15), in the context of the impending termination of the Distributor Agreement in 2010.

In addition to the announced line of "Wascoclean-branded tumble dryers," defendant Neal Milch ("Milch") has caused co-defendant Autarkic Holdings, Inc. ("Autarkic") to apply for registration, as a trademark purportedly owned by Autarkic, of a stylized "W" device trademark (the "Electrolux W Device") under which Electrolux has sold professional laundry equipment in United States commerce for more than forty (40) years (Complaint ¶¶ 22-28). Upon information and belief, defendants' attempted registration of the Electrolux W Device has been undertaken in bad faith and with specific intent to appropriate goodwill associated with the WASCOMAT mark owned by Electrolux (Complaint ¶ 26), once again in the context of the impending termination of the Distributor Agreement in 2010.

**Electrolux's Demand and Defendants' Response**

On January 10, 2007, Electrolux served defendants with formal written demand (see Exhibit 4) that they immediately disavow any intention to use WASCOMAT, WASCOCLEAN, or the Electrolux W Device in association with third-party professional laundry products not

544098

manufactured or approved by Electrolux (Declaration of James W. Dabney, sworn to January 17, 2007 [hereinafter, "Dabney Decl."] ¶ 5; see Exhibit 4 hereto).  On January 15, 2007, the undersigned counsel for Electrolux received an e-mail from defendant Milch, believed to be the CEO of defendant Bermil (see Exhibit 3 hereto), which stated in part: "Kindly forward a pdf of the referenced June 6, 1979 agreement amendment.  I do not have this and need to review it before I can respond" (Dabney Decl. ¶ 6; see Exhibit 5 hereto).  A copy of the 1979 Agreement Amendment was then immediately forwarded to Milch (id.); however, as of late in the day on January 16, 2007, defendants had failed to disavow any intention to use WASCOMAT, WASCOCLEAN, or the Electrolux W Device in association with third-party professional laundry products not manufactured or approved by Electrolux.

By letter dated January 16, 2007, the undersigned counsel for Electrolux informed defendants that Electrolux would be filing the within application for issuance of an Order to Show Cause at noon on January 17, 2007 (Dabney Decl. ¶ 7 & Ex. 6).

**The Court Should Set an Early Hearing on**
**<u>Electrolux's Application for Preliminary Injunctive Relief</u>**

Section 43(a) of the Lanham Act provides a right of action against "[a]ny person who, on or in connecton with any goods or services, uses in commerce any word, term, name, symbol, or device" that "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1). "In a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm . . . ." <u>Hasbro, Inc. v. Lanard Toys, Ltd.</u>, 858 F.2d 70, 73 (2d Cir. 1988) (internal citations omitted) (reversing denial of preliminary injunction).

Here, defendants' threatened use of WASCOMAT, WASCOCLEAN, and the Electrolux W Device in association with professional laundry products not manufactured or approved by

Electrolux, is plainly likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval of such products. Not only is the mark WASCOCLEAN deceptively similar in appearance, sound, and commercial connotation to Electrolux's registered trademark WASCOMAT, but defendant Bermil threatens to use WASCOCLEAN to identify exactly the same type of professional laundry products as Electrolux supplies to Bermil under the WASCOMAT mark, and to do so moreover while simultaneously trading under the WASCOMAT and Electrolux W Device marks as Electrolux's exclusive distributor of WASCOMAT professional laundry products so branded in North America. Defendants' announcement of "Wascoclean-branded tumble dryers" was issued on letterhead that says "Wascomat Laundry Equipment" (see Exhibit 3 hereto). Further, end-users of professional laundry products branded WASCOCLEAN could have no way of knowing that such products are unrelated to genuine WASCOMAT professional laundry products.

The potential for confusion in this case is greatly magnified by defendant Bermil's status as Electrolux's exclusive distributor of genuine WASCOMAT professional laundry products in the United States and Canada. The Second Circuit has repeatedly held that "a licensor's plea for injunctive relief is stronger than the ordinary trademark plaintiff's." <u>Church of Scientology International v. Elmira Mission</u>, 794 F.2d 38, 43 (2d Cir. 1986) (reversing denial of preliminary injunction). "[A]fter a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder." <u>Sunward Electronics, Inc. v. McDonald</u>, 362 F.3d 17, 25 (2d Cir. 2004) (affirming grant of preliminary injunction). <u>A fortiori</u>, an <u>existing</u> trademark licensee has enormous capacity to confuse, mislead, or deceive potential purchasers as to the sponsorship or approval of goods bearing a mark that is deceptively similar to the licensed mark. The accused

5

mark here, WASCOCLEAN, is extremely similar to Electrolux's WASCOMAT mark, and manifestly was chosen by defendants because of that extreme similarity and capacity to mislead. As the Second Circuit has observed:

> It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of his competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them.

Harold F. Richie, Inc. v. Chesebrough-Ponds, Inc., 281 F.2d 755, 758 (2d Cir. 1960) (quoting Florence Mfg. Co. v. J.C. Dowd & Co., 178 F. 73, 75 (2d Cir. 1910)) (BRYLCREEM mark infringed by rival's use of VALCREAM to designate hair dressing for men).

Electrolux filed suit within days of learning of defendants' wrongful plan to distribute unapproved WASCOCLEAN-branded professional laundry products. Electrolux has moved for preliminary injunctive relief within a week following the commencement of this action after defendants failed to disavow their stated intention to use WASCOMAT, WASCOCLEAN, or the Electrolux W Device in association with unapproved third-party products. "Reputation is not calculable nor precisely compensable." Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985). Given the nature of plaintiff's claim and the imminent irreparable harm that defendants threaten to cause, an early hearing on plaintiff's prayer for preliminary injunctive relief is both warranted and appropriate.

## The Court Should Granted Limited Expedited Discovery

Certain information relevant to plaintiff's prayer for preliminary injunctive relief is exclusively in the possession of the defendants. For example, defendants are exclusively in possession of at least some information relating to the financial impact of the requested relief and, thus, the appropriate amount of any preliminary injunction bond that the Court may set.

Defendants similarly are in exclusive possession of at least some information relating to the balance of hardships including the extent to which defendants "deliberately sailed in harm's way." Cherry River Music Co. v. Simitar Entertainment, Inc., 38 F. Supp. 2d 310, 323 (S.D.N.Y. 1999) (Castel, J.) (granting preliminary injunction requiring recall of infringing product). See also Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 151 (2d Cir. 2003) (evidence of bad faith can "affect the court's choice of remedy"; reversing denial of preliminary injunction); LeSportsac, Inc. v. K Mart Corp., 607 F. Supp. 183, 187 (E.D.N.Y. 1984) (McLaughlin, J.) (discounting defendant's claims of hardship and granting preliminary injunction, where "Defendant ha[d] brought these hardships on itself"), aff'd, 754 F.2d 71 (2d Cir. 1985)).

The Court should, thus, grant limited expedited discovery with respect to defendants' announced plan to introduce a line of "Wascoclean-branded tumble dryers" (see Exhibit 3 hereto) so that the Court may render the most informed decision possible on plaintiff's prayer for preliminary injunctive relief. See, e.g., Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (Lynch, J.) (assessing an application for expedited discovery "under the flexible standard of reasonableness and good cause"). The standard time periods specified in the Federal Rules of Civil Procedure are unrealistically protracted in this context. Rules 26(d) and 34(b) of the Federal Rules of Civil Procedure clearly authorize the expedited discovery sought.

As set forth in the accompanying proposed Order to Show Cause, Electrolux has proposed that defendants be ordered to respond to written discovery requests and make requested documents available in New York, New York within seven (7) days, and that defendant be ordered to appear for deposition within ten (10) days from the date of service of notices thereof. Electrolux has further sought leave to seek third-party discovery concerning any person's use, proposed use, or attempted registration of WASCOMAT, WASCOCLEAN, or the Electrolux W

Device on or in connection with any professional laundry products not manufactured or approved by AB Electrolux.

The requested expedited discovery is limited in scope and goes to the core of Electrolux's prayer for preliminary injunctive relief and any defenses defendants might put forward to Electrolux's application. Electrolux accordingly prays that its application for expedited discovery be granted.

## CONCLUSION

For the reasons set forth above, Electrolux's application for an Order to Show Cause should be granted in all respects.

Dated:   New York, New York
         January 17, 2007

>                                    Respectfully submitted,
>
>                                    FRIED, FRANK, HARRIS, SHRIVER
>                                      & JACOBSON LLP
>
>                                    By _____
>                                       James W. Dabney (JD-9715)
>                                       Julie E. Kamps (JK-6041)
>                                       Ron Lazebnik (RL-1984)
>
>                                    One New York Plaza
>                                    New York, New York 10004-1980
>                                    (212) 859-8000
>
>                                    Attorneys for Plaintiff
>                                    AB Electrolux

544098