UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                    :

AB ELECTROLUX,
                    :

            Plaintiff,    :

     - against -        :     **CASE NO. 07 CV 0199 (LAK)**

                    :

BERMIL INDUSTRIES CORPORATION, AUTARKIC  :    **ECF CASE**
HOLDINGS, INC., and NEAL MILCH,
                    :

           Defendants.   :

------------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Plaintiff
AB Electrolux

James W. Dabney (JD-5640)
Julie E. Kamps (JK-6041)
Ron Lazebnik (RL-1984)

    Of Counsel

January 24, 2007

Table of Contents

Page

Electrolux's Use and Ownership of the WASCOMAT Trademark ................................ 3

Bermil's Threatened Willful Infringement ......................................................... 6

Course of Proceedings................................................................................. 9

SUMMARY OF ARGUMENT ....................................................................... 10

ARGUMENT ........................................................................................... 13

I.    ELECTROLUX IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM
FOR VIOLATION OF 15 U.S.C. § 1125(a) ....................................................... 14

    A.    Electrolux's Trademarks Are Entitled to Protection................................... 14

    B.    Defendant's Use of WASCOCLEAN Is Likely to Cause Confusion......... 16

    C.    Defendants Cannot Succeed on Their Purported Affirmative Defenses .... 26

II.    ELECTROLUX WILL SUFFER IRREPARABLE HARM IF THE
PRELIMINARY INJUNCTION DOES NOT ISSUE............................................ 29

III.    THE BALANCE OF HARDSHIPS OVERWHELMINGLY FAVORS A GRANT
OF PRELIMINARY INJUNCTIVE RELIEF ...................................................... 30

    A.    Denial of Preliminary Injunctive Relief Will Result in Certain and
Incalculable Damage to Electrolux's Reputation and Goodwill................. 31

    B.    Any Harm to Defendants From the Granting of  Injunctive Relief Will Be
Minimal ................................................................................................. 31

CONCLUSION ......................................................................................... 33

# TABLE OF AUTHORITIES

## CASES

A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,
  470 F.2d 689 (2d Cir. 1972).................................................................19, 21

American Chicle Co. v. Topps Chewing Gum, Inc.,
  208 F.2d 560 (2d Cir. 1953)................................................................ 19-20

Aztar Corp. v. NY Ent., LLC,
  15 F. Supp. 2d 252 (E.D.N.Y. 1998) ..........................................................23

Browne-Vintners Co. v. National Distillers and Chemical Corp.,
  151 F. Supp. 595 (S.D.N.Y. 1957) .............................................................16

Chips 'N Twigs, Inc. v. Chip-Chip, Ltd.,
  414 F. Supp. 1003 (E.D. Pa. 1976) ....................................................... 29-30

Church of Scientology International v. Elmira Mission,
  794 F.2d 38 (2d Cir. 1986)..........................................................11, 13, 17, 29

De Beers LV Trademark Limited v. DeBeers Diamond Syndicate Inc.,
  440 F. Supp. 2d 249 (S.D.N.Y. 2006).....................................15, 16, 23, 25

Estee Lauder, Inc. v. The Gap, Inc.,
  108 F.3d 1503 (2d Cir. 1997)....................................................................16

E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.,
  90 F. Supp. 2d 277 (S.D.N.Y. 2000)...........................................................18

Florence Manufacturing Co. v. J.C. Dowd & Co.,
  178 F.3d 73 (2d Cir. 1910)..................................................................12, 21

Frank Brunckhorst Co. v. G. Heileman Brewing Co.,
  875 F. Supp. 966 (E.D.N.Y. 1994) ............................................................19

General Motors Corp. v. Hot Carts, Inc.,
  2005 WL 3046289 (E.D. Mich. 2005)........................................................21

Grotrian, Helfferich, Schulz, Th. Steinwey Nach. v. Steinway & Sons,
  523 F.2d 1331 (2d Cir. 1975)...............................................................19, 27

Gruner & Jahr USA Publication v. Meredith Corp.,
  991 F.2d 1072 (2d Cir. 1993).....................................................................14

Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.,
  281 F.2d 755 (2d Cir. 1960)...............................................................12, 18

Hasbro, Inc. v. Lanard Toys, Ltd.,
   858 F.2d 70 (2d Cir. 1988)..................................................................10-11, 13-14, 25, 29

Hamilton Watch Co. v. Benrus Watch Co.,
   206 F.2d 738 (2d Cir. 1953)..................................................................................13

Lang v. Retirement Living Publishing Co., Inc.,
   949 F. 2d 576 (2d Cir. 1991)..................................................................................23

Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino,
   945 F. Supp. 563 (S.D.N.Y. 1996) ...............................................................23, 25, 31

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,
   799 F.2d 867 (2d Cir. 1986)....................................................................14, 20, 23, 30

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
   454 F.3d 108 (2d Cir. 2006)..................................................................................15

Malletier v. Burlington Coat Factory Warehouse Corp.,
   426 F.3d  532 (2d Cir. 2005)...............................................................................21-22

Masterfoods USA v. Arcor USA, Inc.,
   230 F. Supp. 2d 302 (W.D.N.Y. 2002) .....................................................................31

Menendez v. Holt,
   128 U.S. 514, 9 S.Ct. 143 (1888)......................................................................26, 27

Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.,
   452 F. Supp. 429 (S.D.N.Y. 1978) ..........................................................................21

Mobil Oil Corp. v. Pegasus Petroleum Corp.,
   818 F.2d 254 (2d Cir. 1987) ........................................................................14-15, 19

Multisorb Technologies, Inc. v. Impak Corp.,
   2006 WL 1073036 (W.D.N.Y. 2006) .......................................................................13

Nikon Inc. v. Ikon Corp.,
   987 F.2d 91 (2nd Cir. 1993)..................................................................................25

Perfect Fit Industrial, Inc. v. Acme Quilting Co.,
   618 F.2d 950 (2d Cir. 1980)..................................................................................19

Playboy Enterprises, Inc. v. Chuckleberry Public, Inc.,
   687 F.2d 563 (2d Cir. 1982)..................................................................................22

Polaroid Corp. v. Polarad Electronics Corp.,
   287 F.2d 492 (2d Cir. 1961)..............................................................................18, 26

Power Test Petroleum Distributing v. Calcu Gas, Inc.,
    754 F.2d 91 (2d Cir. 1985)..................................................................12, 25, 29

Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.,
    314 F.3d 62 (2d Cir. 2002)................................................................................28

Russian Kurier, Inc. v. Russian American Kurier, Inc.,
    899 F. Supp. 1204 (S.D.N.Y. 1995)..................................................................30

Sage Realty Corp. v. Sage Group, Inc.,
    711 F. Supp. 134 (S.D.N.Y. 1989) ....................................................................15

Sanofi-Synthelabo v. Apotex Inc.,
    2006 WL 2516489 (S.D.N.Y. 2006)..................................................................32

Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.),
    544 F.2d 1167 (2d Cir. 1976)............................................................................15

Shiraz University Sch. of Medical Alumni Association USA, Inc. v. Sheik,
    1999 WL 558139 (S.D.N.Y. 1999).............................................................. 15-16

Southland Corp. v. Froelich,
    41 F. Supp. 2d 277 (E.D.N.Y. 1999) .................................................................29

Spear, Leeds, & Kellogg v. Rosado,
    122 F. Supp. 2d 403 (S.D.N.Y. 2000)................................................................24

Sports Authority, Inc. v. Prime Hospitality Corp.,
    89 F.3d 955 (2d Cir. 1996)..........................................................................16, 24

Standard & Poor's Corp. v. Commodity Exchange, Inc.,
    683 F.2d 704 (2d Cir. 1982)........................................................................12, 29

Sunward Electronics, Inc. v. McDonald,
    362 F.3d 17 (2d Cir. 2004)......................................................................11, 17, 24

TCPIP Holding Co., Inc. v. Haar Communications, Inc.,
    244 F.3d 88 (2d Cir. 2001)................................................................................20

University of Pittsburgh v. Champion Products Inc.,
    686 F.2d 1040 (3d Cir. 1982)............................................................................26

Victoria's Cyber Secret Ltd. v. V. Secret Catalogue, Inc.,
    161 F. Supp. 2d 1339 (S.D. Fla. 2001) .............................................................21

Virgin Enterprises Ltd. v. Nawab,
    335 F.3d 141 (2d Cir. 2003)..............................................14, 18-19, 20, 22-23

Warner Vision Entertainment Inc. v. Empire of Carolina, Inc.,
    101 F.3d 259 (2d Cir. 1996)................................................................13

Waymark Corp. v. Porta Systems Corp.,
    334 F.3d 1358 (Fed. Cir. 2003)..........................................................14

## STATUTES & RULES

15 U.S.C. § 1115(b)...........................................................................14

15 U.S.C. § 1125(a) ..............................................................2, 10, 14, 16

15 U.S.C. § 1127.................................................................................21

Fed. R. Civ. P. 65(b) ...........................................................................1

## ADDITIONAL AUTHORITY

Restatement (3d) of Unfair Competition § 21 cmt. a (1995)........................16

AB Electrolux ("Electrolux") respectfully moves this Court, pursuant to Fed. R. Civ. P. 65(b), for a preliminary injunction restraining defendant Bermil Industries Corporation ("Bermil") from introducing a line of WASCOCLEAN-branded tumble dryers, in willful and wanton infringement of Electrolux's incontestable registered trademark, WASCOMAT. In support of this motion, Electrolux relies on the Declaration of James W. Dabney, Esq., sworn to on January 17, 2007 (the "First Dabney Decl."); the Second Declaration of James W. Dabney, sworn to on January 24, 2007 (the "Second Dabney Decl."); and the Declaration of Jan Rosvall, sworn to on January 24, 2007 (the "Rosvall Decl.").

As set forth more fully below, Bermil currently is Electrolux's exclusive North American distributor of WASCOMAT laundry equipment including tumble dryers, but its distributorship is being terminated (Rosvall Decl. ¶ 12 & Ex. 7). On January 4, 2007, Electrolux learned that Bermil was planning to introduce, without Electrolux's knowledge or approval, but under color of Bermil's still-extant exclusive WASCOMAT distributorship, a line of third-party manufactured tumble dryers under the trademark WASCOCLEAN. Electrolux immediately – within six (6) days – commenced this action and made formal written demand that Bermil disavow any intention to use WASCOCLEAN as a purported designation for tumble dryers. When Bermil failed to provide any substantive response to Electrolux's demand within seven (7) days, Electrolux on January 17, 2007, sought and was granted an Order to Show Cause on its prayer for preliminary injunctive relief returnable January 25, 2007.

The accused mark WASCOCLEAN is very obviously derived from Electrolux's well-known incontestable registered trademark, WASCOMAT, and equally obviously was chosen by Bermil in bad faith and with specific intent to appropriate and capitalize on the goodwill and reputation that Electrolux has built up through decades of use, research, development, and

hundreds of millions in sales of professional laundry equipment under the WASCOMAT mark in the United States since the 1950's. Bermil itself has long advertised WASCOMAT laundry equipment as "The Standard of Quality for 100 years" made by "[t]he world's leading manufacturer of commercial laundry equipment". Rosvall Decl. ¶ 6 & Ex. 4.

Electrolux is threatened with imminent irreparable harm to the WASCOMAT mark and goodwill warranting interim relief. By contrast, the requested injunctive relief is very narrow: Bermil would remain free to market the third-party manufactured tumble dryers that it plans to market, but simply could not apply a private WASCOCLEAN dealer label to them. Bermil has willfully and inexcusably failed to comply with this Court's Order granting expedited discovery and, as a consequence, Bermil has made no discovery to Electrolux concerning just how far, if at all, Bermil has proceeded with its announced putative plan to introduce a new line of third-party manufactured tumble dryers under a WASCOCLEAN dealer's mark. Second Dabney Decl. ¶¶ 6-7 & Exs. 5-6. Bermil has produced no sales records, brochures, or other documents concerning the proposed WASCOCLEAN dryers, or any other evidence that a grant of the requested relief would have any more than minimal impact. Especially in view of Bermil's wilful defiance of the January 17 expedited discovery order, the deliberate failure of Bermil's newly-appointed CEO, defendant Neal Milch, to appear for a properly noticed deposition or to produce any requested documents supports an inference that only a nominal preliminary injunction bond should be required in this case.

The balance of hardships overwhelmingly favors Electrolux; Electrolux is highly likely to succeed on the merits of its claims for relief under 15 U.S.C. § 1125(a); and the public interest favors a grant of the requested relief. Electrolux's motion for preliminary injunction should be granted.

2

## FACTS

Electrolux is one of the world's largest manufacturers of professional laundry equipment. Rosvall Decl. ¶ 2. "Professional" laundry equipment includes washing machines, tumble dryers, ironers, and related apparatus and spare parts that are sold primarily for commercial as distinct from residential home use. Id. In the year ending December 31, 2005, Electrolux's worldwide sales of professional laundry equipment exceeded USD $300 million. Id.

**Electrolux's Use and Ownership of the WASCOMAT Trademark**

Electrolux-manufactured professional laundry equipment is exported to the United States and marketed there and in Canada under the trademarks WASCOMAT and a stylized W device (the "Electrolux W Device"). Rosvall Decl. ¶ 3. The Electrolux W Device is exemplified by the image below (id. & Ex. 2):



Electrolux has used the trademarks WASCOMAT and the Electrolux W Device to identify Electrolux-manufactured professional laundry equipment marketed in the United States continuously since the 1950's. Rosvall Decl. ¶ 3. Electrolux is the owner of incontestable U.S. Reg. No. 727,703 issued February 20, 1962, for the trademark WASCOMAT (the "'703 Registration") as applied to "washing machines." First Dabney Decl. ¶ 2 & Ex. 1; Second Dabney Decl. ¶ 8 & Ex. 7; Rosvall Decl. ¶ 3. Electrolux uses the Electrolux W Device globally. Rosvall Decl. ¶ 3.

Electrolux currently markets WASCOMAT professional laundry equipment in the United States and Canada through a two-tier distribution system.  Rosvall Decl. ¶ 4.  Electrolux sells and delivers WASCOMAT products directly and exclusively to defendant Bermil, a New York-based wholesale distributor (id. ¶ 2 & Ex. 1; ¶ 4); Bermil in turn re-sells WASCOMAT products to retail dealers.  Id. ¶ 4.

Electrolux and Bermil are parties to a written distribution agreement dated July 12, 1960 (the "Distributor Agreement"), which agreement has been extended and amended from time to time.  Rosvall Decl. ¶ 4 & Ex. 3.  Since at least 1979, Bermil has undertaken to use its "best efforts" to market Electrolux-manufactured professional laundry equipment in preference to similar competitive equipment.  Id. ¶ 4 & Ex. 3.  Among other things, as amended June 6, 1979, the Distributor Agreement between Electrolux and Bermil provides in part (id.):

> Bermil acknowledges that AB Electrolux has a valid registration on the name Wascator and Wascomat and combinations thereof as filed with the patent office.
>
> Bermil agrees that in using the said trade mark it will not represent in any way that it has any right or title to the ownership thereof or to any registration thereof and during the life of this agreement Bermil will use the said trade mark to the degree necessary to protect and preserve AB Electrolux' rights thereto in the US and Canada.

Bermil advertises and promotes WASCOMAT laundry equipment via, among other things, an Internet "web site" that is associated with the domain name www.wascomat.com.  Rosvall Decl. ¶ 5.  The Bermil "web site" is headed "Wascomat Laundry Equipment" with a replica of the Electrolux W Device and the word Wascomat in the form that Electrolux places those marks on professional laundry equipment that is sold to Bermil for distribution in the United States and Canada.  Id. ¶ 5 & Ex. 4.  The Bermil "web site" currently advertises only

4

Electrolux-manufactured professional laundry equipment with the exception of certain add-on accessories that bear their own distinct brand names.  Id. ¶ 5.

Bermil promotes the WASCOMAT range of professional laundry equipment in part by use of a trade name that includes the word WASCOMAT and also by highlighting Electrolux's long history of innovation and delivery of quality products.  Rosvall Decl. ¶ 6 & Ex. 4.  Bermil refers to Electrolux as "[t]he world's leading manufacturer of commercial laundry equipment for self-service coin laundries" and states, "Wascomat state-of-the-art, water, energy, gas and labor efficient washers, dryers and flatwork ironers are the standard of quality for over 100 years."  Id.

Electrolux places on each WASCOMAT washer and dryer a label or plate bearing a unique Electrolux-assigned serial number and various manufacturing and technical information.  Rosvall Decl. ¶ 7.  Exhibit 5 to the Rosvall Declaration depicts a specimen of a serial number label of the type that Electrolux has placed on all WASCOMAT clothes washers and dryers since at least 1978.  Id. ¶ 7 & Ex. 5.  The Electrolux W Device and the WASCOMAT trademark appear on serial number labels and plates that Electrolux has placed on WASCOMAT clothes washers and clothes dryers from time to time since at least 1978.  Id. ¶ 7.

Electrolux also prepares and distributes user and operating manuals for WASCOMAT laundry equipment and places such manuals in the drums of WASCOMAT washers and dryers prior to their shipment to the United States.  Rosvall Decl. ¶ 8.  Annexed to the Rosvall Declaration as Exhibit 6 is a specimen WASCOMAT clothes dryer operating manual.  Id. ¶ 8 & Ex. 6.  The format and contents of Exhibit 6 are typical of WASCOMAT operating manuals that Electrolux has been shipping with WASCOMAT professional laundry equipment since approximately 2002, which marked the 100th anniversary of Electrolux's predecessor's start in the professional laundry equipment business.  Id. ¶ 8.

5

By reason of many years of continuous product development, sales, marketing, and promotional activity, the WASCOMAT trademark and the Electrolux W Device represent assets that Electrolux believes have enormous goodwill and selling power in the United States market for professional laundry products.  Rosvall Decl. ¶ 9.  Since 1978, Electrolux has manufactured, sold, and exported to the United States upwards of $600 million in professional laundry products identified by WASCOMAT and the Electrolux W Device.  Id. ¶ 10.

Electrolux engages in continuous efforts to improve WASCOMAT professional laundry products, including their efficiency in use of water and energy.  Rosvall Decl. ¶ 11.  The sales success of WASCOMAT products in the United States reflects the high quality that Electrolux builds into the products, the relative energy efficiency of WASCOMAT products as compared with rival products, post-sale support that Electrolux provides in the furnishing of spare parts for WASCOMAT products, and the strong manufacturer's warranty coverage that Electrolux extends to purchasers of WASCOMAT products.  Id.  Some WASCOMAT professional laundry products have been in commercial service for more than 20 years.  Id.

**Bermil's Threatened Willful Infringement**

In 2005 and 2006, Electrolux and Bermil held fruitless discussions with regard to terminating the Distribution Agreement prior to its current termination date of December 31, 2010.  Rosvall Decl. ¶ 13 & Ex. 8.  By letter dated June 20, 2006, Electrolux informed Bermil: "During the remainder of the termination notice period (ending December 31, 2010), please be assured that Electrolux will endeavor to abide by the terms of both the distribution agreement and the course of dealing the parties have established during their business relationship, provided Bermil does likewise."  Id.

Electrolux subsequently learned that defendant Neal Milch ("Milch"), a son of Bermil's founder, had caused defendant Autarkic Holdings, Inc. ("Autarkic") to apply for registration of WASCOCLEAN as a trademark purportedly owned by Autarkic. On October 3, 2006, Electrolux filed a Notice of Opposition to the WASCOCLEAN application. Second Dabney Decl. ¶ 10 & Ex. 10. Subsequently, on November 3, 2006, defendant Milch registered the domain name WASCOCLEAN.COM (id. ¶ 3 & Ex. 2); however, the name was dormant and pointed to a passive "park page" up through at least December 15, 2006. Id. ¶ 2 & Ex. 1.

Then in a communication dated December 20, 2006, on "WASCOMAT Laundry Equipment" letterhead, and with full knowledge of Electrolux's objection and pending opposition to Autarkic's (thus far failed) attempt to register WASCOCLEAN as a trademark, Bermil suddenly wrote to WASCOMAT dealers (see Rosvall Decl. ¶ 14 & Ex. 9):

> Bermil Industries will be introducing in January a range of Wascoclean-branded tumble dryers manufactured for us by American Dryer Corporation, which will be available for immediate delivery in coin, debit card, and OPL configurations. These Wascoclean dryers are an addition to the Wascomat-branded TD dryers, which of course remain available as before.

The above-quoted communication by Bermil was issued without Electrolux's knowledge or approval. Rosvall Decl. ¶ 14. Contrary to vaguely and misleadingly-worded assertions made in Bermil's counsel's letter to the Court dated January 18, 2007, Bermil's proposed distribution of "Wascoclean-branded tumble dryers" represents both (1) a completely new course of conduct, and (2) one that that departs substantially from any activity that Electrolux has ever approved in the past. Id. ¶ 19.

Bermil's counsel's assertion that the within motion challenges a "long-continuing course of conduct" (Jan. 18 letter at 2) is simply untrue. From time to time five (5) or more years ago,

Electrolux did not object to Bermil's use of variants of WASCOMAT, including WASCOCLEAN and WASCODRY, to identify certain types of machines that Electrolux did not, at the time, manufacture for the United States market; however, these uses required Electrolux's approval (which was given) and, equally important, these uses were discontinued when Electrolux commenced the manufacture of comparable equipment which Bermil now markets and sells under the WASCOMAT brand. See Rosvall Decl. ¶ 17. For at least the five (5) years preceding January 10, 2007, Bermil had sold only WASCOMAT-branded professional laundry equipment sourced from Electrolux affiliates. Id. ¶¶ 5, 17. As of January 22, 2007, the Bermil "web site" did not refer to any WASCOCLEAN equipment. Id.[1]

In sharp contrast, Bermil is now proposing to initiate a wholly new line of third-party manufactured dryers and to private label them WASCOCLEAN without Electrolux's approval, and to do so notwithstanding that (a) the dryers involved are exactly the same type of professional laundry product that Electrolux currently manufactures and supplies to Bermil under the WASCOMAT mark, (b) Bermil is continuing to use the WASCOMAT mark in its trade name, and (c) Bermil is threatening to use WASCOCLEAN in manner that is openly hostile to Electrolux and Electrolux's interest in the WASCOMAT mark. Rosvall Decl. ¶ 19.

As noted above, defendant Milch has caused defendant Autarkic to seek registration of WASCOCLEAN as a trademark purportedly owned by Autarkic. Second Dabney Decl. ¶ 10 &

---

[1]     In defiance of the Order to Show Cause granting expedited discovery, Bermil has failed and refused to make discovery with respect to its non-use of WASCOCLEAN for years prior to 2007. Second Dabney Decl. at ¶¶ 6-7 & Exs.5-6

Ex. 9.  Electrolux has never approved of Autarkic's use of any marks used in association with WASCOMAT professional laundry equipment.  Rosvall Decl. ¶ 19.  Electrolux has no control over the quality, pricing, support, or warranties of the dryers that Bermil is proposing to sell under the WASCOCLEAN mark.  Rosvall Decl. ¶ 20.

In addition to the announced line of "Wascoclean-branded tumble dryers," defendant Milch has caused co-defendant Autarkic to apply for registration, as a trademark purportedly owned by Autarkic, of the Electrolux W Device that Electrolux uses on a global basis and has used on professional laundry equipment in United States commerce for more than forty (40) years (Complaint ¶¶ 22-28; Second Dabney Decl. ¶ 9 & Ex. 8; Rosvall Decl. ¶ 3).[2]  Upon information and belief, defendants' attempted registration of the Electrolux W Device has been undertaken in bad faith and with specific intent to appropriate goodwill associated with the WASCOMAT mark owned by Electrolux (Complaint ¶ 26), in the context of the impending termination of the Distributor Agreement in 2010.

## Course of Proceedings

Electrolux commenced this action within six (6) days of learning of Bermil's threatened unauthorized use of WASCOCLEAN.   Concurrently with the filing of the Complaint on January 10, 2007, Electrolux served defendants with a formal written demand that they immediately disavow any intention to use WASCOMAT, WASCOCLEAN, or the Electrolux W

---

[2]   Notably, as purported evidence of Autarkic's exclusive right to use the Electrolux W Device to identify clothes dryers, Milch submitted an Electrolux-created operating manual for an Electrolux-manufactured tumble dryer that Electrolux marks with the Electrolux W Device before it leaves the factory.  Rosvall Decl. ¶¶ 3 & Ex. 2, 8 & Ex. 6

Device in association with third-party professional laundry products not manufactured or approved by Electrolux (First Dabney Decl. ¶ 5). On January 15, 2007, the undersigned counsel for Electrolux received an e-mail from defendant Milch, believed to be the CEO of defendant Bermil (Rosvall Decl. ¶ 14 & Ex. 9), which stated in part: "Kindly forward a pdf of the referenced June 6, 1979 agreement amendment. I do not have this and need to review it before I can respond" (First Dabney Decl. ¶ 6). A copy of the 1979 Agreement Amendment was then immediately forwarded to Milch (id.); however, as of late in the day on January 16, 2007, defendants had failed to provide any substantive response to Electrolux's demand.

By letter dated January 16, 2007, the undersigned counsel for Electrolux informed defendants that Electrolux would be filing at noon on Wednesday, January 17, 2007, an application for issuance of an Order to Show Cause seeking an early hearing on Electrolux's prayer for preliminary injunctive relief and expedited discovery. On January 17, 2007, over defendants' opposition, Judge Haight granted Electrolux's application and directed defendants to make deposition and documentary discovery on or before January 23, 2007. Thereafter, in willful violation of the Court's expedited discovery order, defendant Milch failed to appear for deposition on January 22 and failed to produce any requested documents concerning Bermil's plan to initiate sales of WASCOCLEAN-branded tumble dryers or any other matter.

## SUMMARY OF ARGUMENT

Section 43(a) of the Lanham Act provides a right of action against "[a]ny person who, on or in connection with any goods or services, uses in commerce any word, term, name, symbol, or device" that "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1). "In a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of success

10

on the merits and irreparable harm . . . ."   Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d

Cir. 1988) (internal citations omitted) (reversing denial of preliminary injunction).

Here, defendants' threatened use of WASCOMAT, WASCOCLEAN, and the Electrolux

W Device in association with professional laundry products not manufactured or approved by

Electrolux, is plainly likely to cause confusion, to cause mistake, or to deceive as to the origin,

sponsorship, or approval of such products.  Not only is the mark WASCOCLEAN deceptively

similar in appearance, sound, and commercial connotation to Electrolux's registered trademark

WASCOMAT, but defendant Bermil threatens to use WASCOCLEAN to identify exactly the

same type of professional laundry products as Electrolux supplies to Bermil under the

WASCOMAT mark, and to do so moreover while simultaneously trading under the

WASCOMAT and Electrolux W Device marks as Electrolux's exclusive distributor of

WASCOMAT professional laundry products so branded in North America.   Defendants'

announcement of "Wascoclean-branded tumble dryers" was issued on letterhead that says

"Wascomat Laundry Equipment." Rosvall Decl. Ex. 9.

The potential for confusion in this case is greatly magnified by defendant Bermil's status

as Electrolux's exclusive distributor of genuine WASCOMAT professional laundry products in

the United States and Canada.  The Second Circuit has repeatedly held that "a licensor's plea for

injunctive relief is stronger than the ordinary trademark plaintiff's."  Church of Scientology

International v. Elmira Mission, 794 F.2d 38, 43 (2d Cir. 1986) (reversing denial of preliminary

injunction).  "[A]fter a license has been revoked, there is an increased danger that consumers will

be confused and believe that the former licensee is still an authorized representative of the

trademark holder." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 25 (2d Cir. 2004)

(affirming grant of preliminary injunction).  A fortiori, an existing trademark licensee has

11

enormous capacity to confuse, mislead, or deceive potential purchasers as to the sponsorship or approval of goods bearing a mark that is deceptively similar to the licensed mark. The accused mark here, WASCOCLEAN, is extremely similar to Electrolux's WASCOMAT mark, and manifestly was chosen by defendants precisely because of that extreme similarity and capacity to mislead. As the Second Circuit has observed:

> It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of his competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them.

Harold F. Richie, Inc. v. Chesebrough-Ponds, Inc., 281 F.2d 755, 758 (2d Cir. 1960) (quoting Florence Mfg. Co. v. J.C. Dowd & Co., 178 F. 73, 75 (2d Cir. 1910)) (BRYLCREEM mark infringed by rival's use of VALCREAM to designate hair dressing for men).

Electrolux filed suit within days of learning of defendants' wrongful plan to distribute unapproved WASCOCLEAN-branded professional laundry products. Electrolux has moved for preliminary injunctive relief within a week following the commencement of this action after defendants failed to disavow their stated intention to use WASCOMAT, WASCOCLEAN, or the Electrolux W Device in association with unapproved third-party products. "Reputation is not calculable nor precisely compensable." Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985). Defendants have made little or no use of WASCOCLEAN in association with ADC-manufactured dryers; the requested relief would merely preserve the pre-suit status quo and leave Bermil free to carry on its business as it did for at least five (5) years prior to January 10, 2007, and even to market third-party manufactured tumble dryers under their original manufacturer's name (that is, "ADC") or any other name not confusingly

similar to WASCOMAT.   The balance of hardships overwhelmingly favors a grant of the requested relief and the public interest supports a grant of the requested relief.

## ARGUMENT

The purpose of a preliminary injunction is "to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." Warner Vision Entm't Inc. v. Empire of Carolina, Inc., 101 F.3d 259, 261-62 (2d Cir. 1996) (quoting Hamilton Watch Co. v. Benrus Watch Co. 206 F.2d 738, 742 (2d Cir. 1953)).   See also Multisorb Technologies, Inc. v. Impak Corp., 2006 WL 1073036, at *2 (W.D.N.Y. 2006) (granting preliminary injunction and stating that the purpose of issuing a preliminary injunction is to "preserve the status quo and thus prevent irreparable harm until the court has an opportunity to rule on the merits").   "A court hearing a request for a preliminary order must determine how best to create or preserve a state of affairs such that it will be able upon conclusion of the full trial to render a meaningful decision for either party." WarnerVision, 101 F.3d at 261 (citation omitted).

"A preliminary injunction should be granted where the moving party demonstrates (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor." Church of Scientology, 794 F.2d at 41. See also Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988) (reversing denial of preliminary injunction and finding that GUNG HO! line of action figures infringed plaintiff's prior use of GUNG HO as code name for action figure).

Here, the requisites for injunctive relief are plainly met.

13

**I.      ELECTROLUX IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM FOR VIOLATION OF 15 U.S.C. § 1125(a)**

Section 43(a) of the Lanham Act provides a right of action against "[a]ny person who, on or in connection with any goods or services, uses in commerce any word, term, name, symbol, or device" that "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1); see also Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358, 1363 (Fed. Cir. 2003) (noting that section 43(a) of the Lanham Act "provides a remedy for infringement of both registered and unregistered trademarks").   A claim of trademark infringement brought under 15 U.S.C. § 1125(a) is analyzed under a two-prong test.  See Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) (citing Gruner & Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993)).   The two inquiries are (1) whether plaintiff's mark is entitled to protection; and (2) whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.  See Virgin, 335 F.3d at 146.  Electrolux satisfies both prongs.

**A.      Electrolux's Trademarks Are Entitled to Protection**

WASCOMAT and the Electrolux W Device are strong marks that are entitled to protection.   Under 15 U.S.C. § 1115(b), Electrolux's incontestable registered trademark constitutes "conclusive evidence" of Electrolux's exclusive right to use the mark WASCOMAT as applied to, among other things, washing machines since 1962.   "[R]egistered trademarks . . . should be afforded the utmost protection."  Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986).  Furthermore, WASCOMAT is a coined term having no ordinary meaning, and is therefore a "fanciful" mark that is inherently "strong" and

14

deserves "the most protection the Lanham Act can provide." Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 257 (2d Cir. 1987) (flying horse picture used by oil company was an arbitrary mark deserving protection from another oil company's use of the word Pegasus); see also Sage Realty Corp. v. Sage Group, Inc., 711 F. Supp. 134, 138 (S.D.N.Y. 1989) ("Fanciful terms are "coined" terms, which have no independent meaning."). The Electrolux W Device is also an "arbitrary" or "fanciful" mark that is stylized to be inherently distinctive, and deserves protection. See Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 116 (2d Cir. 2006) (mark composed of multicolored styled shapes and letters was inherently distinctive).

The WASCOMAT mark is protectable with regard to clothes dryers as well as washers. Electrolux has used WASCOMAT and the W Device on clothes dryers since the 1990s. See Rosvall Decl. ¶ 17. In addition, clothes dryers are a closely related, non-competing product, such that defendants' proposed mark has the potential of creating consumer confusion with regard to the source of the products. See, e.g., Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.), 544 F.2d 1167, 1172 (2d Cir. 1976) (trademark owner has "rights against use on related, non-competing products"); De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc., 440 F. Supp. 2d 249, 273-74 (S.D.N.Y. 2006) ("extension of trademark protection to related products guards against improper restraints on the possible expansion of the senior user's market, including customer confusion, tarnishment of the senior user's reputation, and unjust enrichment of the infringer") (quoting Mobil Oil Corp., 818 F.2d at 259).

Because they are at least arbitrary, neither WASCOMAT nor the Electrolux W Device requires secondary meaning to be protected. See, e.g., Shiraz Univ. Sch. of Med. Alumni Ass'n USA, Inc. v. Sheik, 1999 WL 558139, at *3 (S.D.N.Y. 1999) (noting that no secondary meaning

15

is required for arbitrary logo in granting preliminary injunction).  Nevertheless, Electrolux has continuously used WASCOMAT and the Electrolux W Device to identify professional laundry equipment marketed in the United States since the 1950's.  See Rosvall Decl. ¶ 3; see also Browne-Vintners Co. v. Nat'l Distillers and Chem. Corp., 151 F. Supp. 595, 599 (S.D.N.Y. 1957) (secondary meaning acquired in the word "Mumm" for champagne through more than two centuries use).  By reason of many years of continuous product development, sales, marketing, and promotional activity, the WASCOMAT trademark and the Electrolux W Device represent assets that Electrolux believes have enormous goodwill and selling power in the United States market for professional laundry products.  See Rosvall Decl. ¶ 9.  Plaintiff's use of WASCOMAT and the Electrolux W Device on the exterior of all of its professional laundry equipment distributed in the United States since at least the 1950's deserves the protection of this court.

**B.    Defendant's Use of WASCOCLEAN Is Likely to Cause Confusion**

"The test for infringement is whether the actor's use of the designation as a trademark . . . creates a likelihood of confusion." Estee Lauder, Inc. v. The Gap, Inc., 108 F.3d 1503, 1508-09 (2d Cir. 1997) (quoting Restatement (3d) of Unfair Competition § 21 cmt. a (1995)).  Confusion exists "where the defendant's actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the defendant's goods or services with those of the plaintiff." Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955 (2d Cir. 1996) (quoting 15 U.S.C. § 1125(a)(1)(A)); see also De Beers LV Trademark Ltd., 440 F. Supp. 2d at 274 ("[c]onfusion giving rise to a claim of trademark infringement includes confusion as to 'source, sponsorship, affiliation, connection, or identification'") (citation omitted).

There can be no serious question but that these defendants are threatening to commence use of WASCOCLEAN as a purported designation for professional laundry equipment not manufactured or approved by Electrolux, not with any intention to distinguish their products from Electrolux-approved or manufactured products, but on the contrary, to cash in on and appropriate to themselves the commercial magnetism and selling power of the WASCOMAT brand. Defendant Bermil threatens to use WASCOCLEAN to identify exactly the same type of professional laundry products as Electrolux supplies to Bermil under the WASCOMAT mark, and to do so moreover while simultaneously trading under the WASCOMAT and Electrolux W Device marks as Electrolux's exclusive distributor of WASCOMAT professional laundry products so branded in North America. See Rosvall Decl. ¶¶ 15, 17.

The potential for confusion in this case is greatly magnified by defendant Bermil's status as Electrolux's exclusive distributor of genuine WASCOMAT professional laundry products in the United States and Canada. The Second Circuit has repeatedly held that "a licensor's plea for injunctive relief is stronger than the ordinary trademark plaintiff's." Church of Scientology Int'l, 794 F.2d at 43 (reversing denial of preliminary injunction). "[A]fter a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder." Sunward Elecs., 362 F.3d at 25 (affirming grant of preliminary injunction).

A fortiori, an existing trademark licensee has enormous capacity to confuse, mislead, or deceive potential purchasers as to the sponsorship or approval of goods bearing a mark that is

deceptively similar to the licensed mark.[3]  See E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc., 90 F. Supp. 2d 277, 300 (S.D.N.Y. 2000) ("So too the licensee is bound to know that its use and promotion of the licensed mark gives the licensee no rights in the mark; its efforts inure to the benefit of the owner.  Indeed, a licensee that wishes to create rights in a mark separate from the licensed mark has an affirmative obligation to choose a mark sufficiently different from the licensed mark to avoid confusing -- "[t]he licensee trades upon the good will of the licensor at the licensee's peril").

Balancing the eight factors set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F. 2d 492 (2d Cir. 1961), that are used in this Circuit to assess likelihood of confusion overwhelmingly confirms that defendants' use of WASCOCLEAN is likely to mislead and deceive consumers as to the origin, sponsorship, or connection of defendants' WASOCLEAN-branded tumble dryers to Electrolux.[4]  Here, all of the Polaroid factors heavily favor a finding of infringement.

**Bad faith.**  This is a textbook case of bad faith.  Defendants have intentionally copied Electrolux's Trademarks, for the purpose of exploiting Electrolux's goodwill and reputation.  "Intentional copying gives rise to a presumption of likelihood of confusion."  Mobil Oil, 818

---

[3]  See also Harold F. Ritchie, 281 F.2d at 758 (Swan, J) ("In this circuit and others, numerous decisions have recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer;" "One entering a field of endeavor already occupied by another should, in the selection of a trade name or trademark, keep far enough away to avoid all possible confusion") (citations omitted).

[4]  The Second Circuit has stated that "[s]ix of the Polaroid factors relate directly to the likelihood of consumer confusion."  Virgin, 335 F. 3d at 146.  The six pertinent factors are "the strength of the plaintiff's mark; the similarity of defendant's mark to plaintiff's; the proximity of the products sold under defendant's mark to those sold under plaintiff's; where the products are different, the likelihood that plaintiff will bridge the gap

**Footnote continued**

F.2d at 258.  See Perfect Fit Indus., Inc. v. Acme Quilting Co., 618 F.2d 950, 954 (2d Cir. 1980) (where there is proof of wrongful intent, likelihood of confusion may be presumed); see also Grotrian, Helfferich, Schulz, Th. Steinwey Nach. v. Steinway & Sons, 523 F.2d 1331, 1342 (2d Cir. 1975) (affirming judgment of intentional infringement where defendant evidenced "an intent on the part of [defendant] to obtain a free ride in the United States on the strength of [plaintiff's] name"); A.T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689, 692 (2d Cir. 1972) (affirming injunction and emphasizing that defendant was familiar with plaintiff's mark prior to adopting confusingly similar mark).  "When a company appropriates a mark that is well-known and has acquired a secondary meaning, an inference can be drawn that the company intends to capitalize on the good will and reputation of the mark, as well as any confusion that might result as to the common origin between that mark and the senior user's product."  Frank Brunckhorst Co. v. G. Heileman Brewing Co., 875 F. Supp. 966, 982 (E.D.N.Y. 1994).  In fact, as pointed out by Judge Learned Hand,

> Why [a defendant] should have chosen a mark that had long been employed by [the plaintiff] and had become known to the trade instead of adopting some other means to identify its goods is hard to see unless there was a deliberate purpose to obtain some advantage from the trade which [the plaintiff] had built up. Indeed, it is generally true that, as soon as we see that a second comer in market has, for no reason that he can assign, plagiarized the "make-up" of an earlier comer, we need no more; for he at any rate thinks that any differentia he adds will not, or at least may not,

---

**Footnote continued from previous page**

by selling the products being sold by defendants; the existence of actual confusion among consumers; and the sophistication among consumers."  Virgin, 335 F.3d at 146-47.

> prevent the diversion and we are content to accept his forecast that
> he is "likely" to succeed. Then we feel bound to compel him to
> exercise his ingenuity in quarters further afield.

Am. Chicle Co. v. Topps Chewing Gum, Inc., 208 F.2d 560, 561-62 (2d Cir. 1953) (citation

omitted).

Defendant, having been Electrolux's exclusive licensed U.S. distributor for more than

forty years, was fully aware of Electrolux's trademarks.  Defendants only threatened to begin

using the infringing marks on tumble dryers after being notified that its Distributor Agreement

would be terminated, and after having been placed on notice that Electrolux objects to their use

of WASCOCLEAN.  Defendants are using WASCOCLEAN in bad faith to usurp the goodwill

Electrolux's trademarks have earned; thus, this factor alone establishes a presumption of

infringement.

**Strength of the plaintiff's mark.**    Electrolux's WASCOMAT and W (stylized)

trademarks are strong.  The strength of a mark can be measured through either its "inherent

distinctiveness" or the distinctiveness it has acquired through prominent use in commerce.

Virgin, 335 F.3d at 147.  With respect to the inherent uniqueness of a mark, "[t]he most

distinctive marks, and thus the strongest, are marks that are arbitrary or fanciful."  TCPIP

Holding Co., Inc. v. Haar Commc'ns, Inc., 244 F.3d 88, 94 (2d Cir. 2001).  Electrolux's

WASCOMAT and W (stylized) trademarks are at least arbitrary, if not fanciful, in the context of

professional laundry products.  WASCOMAT is not an actual word, but a coined term and

carries no ordinary meaning beyond its decades-long association with Electrolux's products.

Further, "registered trademarks are presumed to be distinctive . . . ."  Lois Sportswear, 799 F.2d

at 871.  Both WASCOMAT and the Electrolux W Device have been used for decades on

hundreds of millions of dollars worth of professional laundry equipment.  See Rosvall Decl.

¶ 10.  Defendant Bermil's own website, which states, for instance, that "Wascomat [products] are the standard of quality for over 100 years," confirms the commercial strength of Electrolux's Trademarks.  See Rosvall Decl. ¶ 6 & Exhs. 3-4.  Electrolux's trademarks are therefore highly distinctive and strong, making this factor heavily favor the plaintiff.[5]

**Similarity of the marks.**  The accused mark here, WASCOCLEAN, is extremely similar, if not identical for purposes of analysis, to Electrolux's WASCOMAT mark, and manifestly was chosen by defendants because of that extreme similarity and capacity to mislead.[6] See, e.g., Florence Mfg., 178 F. at 75 (BRYLCREEM mark infringed by rival's use of VALCREAM to designate hair dressing for men); Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd., 452 F. Supp. 429, 448 (S.D.N.Y. 1978) (HIGH LIFE mark infringed by defendant's use of HIGHLITE mark to designate beer); A. T. Cross, 470 F.2d at 692 (CROSS mark infringed by defendant's use of LA CROSSE mark to designate pens); General Motors Corp. v. Hot Carts, Inc., 2005 WL 3046289, at *3 (E.D. Mich. 2005) (HUMMER mark used on cars infringed by defendant's use of HUMDINGER mark to designate golf carts).

The test for determining similarity is whether the marks are likely to leave similar impressions on consumers.  See Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d

---

[5]  While there have previously existed marks such as WASCOCLEAN and WASCODRY in the same industry as plaintiff's mark, those uses have ceased at least over five years ago.  See Rosvall Decl. ¶¶ 16-17.  Non-use for three consecutive years is prima facie evidence of abandonment.  See 15 U.S.C. § 1127. Any damage those marks may have once caused the plaintiff's registered mark is thus irrelevant.

[6]  "[I]t is a bedrock axiom of the Lanham Act that the addition of generic or minor words to a trademark, especially a famous trademark, notwithstanding the positioning of the words, does nothing to abate likely confusion or dilutive effect."  Victoria's Cyber Secret Ltd. v. V. Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001).

532, 537 (2d Cir. 2005) (vacating denial of injunction and stating that "[t]o apply this factor, courts must analyze the mark's overall impression").  When the comparison is between marks on identical product types, identity of the two marks is not necessary.  Id.  Here, defendant's infringing WASCOCLEAN mark for tumble dryers is being used on exactly the same type of product Bermil distributes for Electrolux, at the same time, and while trading as WASCOMAT Laundry Equipment.

The accused mark clearly has the same general overall impression of plaintiff's WASCOMAT mark for professional laundry products, and no other competitors use a similar mark (Rosvall Decl. ¶ 18).  See, e.g., Playboy Enters., Inc. v. Chuckleberry Pub., Inc., 687 F.2d 563, 568 (2d Cir. 1982) (prefix "Play" was a significant similarity because it was not used by any other sex magazines aimed at adult male heterosexuals).  Because defendants are targeting dealers who are familiar with Electrolux, and to whom Bermil is currently marketing products manufactured or approved by Electrolux (as it has been doing for more than forty years), the infringing marks are even more likely to mislead consumers, and cause consumers to think that defendant's WASCOCLEAN-branded tumble dryers belong to the same family of products manufactured or approved by Electrolux.  This factor therefore favors Electrolux.

**Proximity of the products sold and likelihood of bridging the gap.**  Only a cursory consideration is necessary of either the proximity of products or plaintiff's likelihood to bridge the gap to determine that both factors unambiguously favor Electrolux.  With regard to proximity, "[t]he closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source."  Virgin, 335 F. 3d at 150.  The products here are identical.  See, e.g., First Dabney Decl. ¶ 11 & Ex. 3 (December 20 Letter) ("These WASCOCLEAN dryers are an

22

addition to the WASCOMAT-branded TD dryers, which of course remain available as before"). Furthermore, there is no need to assess the likelihood of plaintiff bridging the gap because plaintiff is already selling the same type of products contemplated by defendants to the same set of consumers.  These two factors therefore weigh heavily in favor of the plaintiff.

**Actual confusion.**  While defendants have not yet commenced selling the infringing WASCOCLEAN-branded laundry equipment, and thus there has not yet been an opportunity for actual confusion, actual confusion need not be shown to prevail under the Lanham Act.  See, e.g., De Beers LV Trademark Ltd., 440 F. Supp. 2d at 276 (noting that "[s]ince defendants have not yet used their mark in commerce, data regarding actual confusion among consumers, which would ordinarily be difficult to develop in any context, is impossible to obtain here"); see also Aztar Corp. v. NY Ent., LLC, 15 F. Supp. 2d 252, 261 (E.D.N.Y. 1998) ("it is blackletter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source") (quoting Lois Sportswear, 799 F.2d at 875).

Actual confusion can be shown by demonstrating that defendants "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation."  Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino, 945 F. Supp. 563, 571 (S.D.N.Y. 1996) (issuing preliminary injunction where similarity of ballet troupe names and targeting of fan base could cause commercial injury) (quoting Lang v. Retirement Living Publ'g Co., Inc., 949 F.2d 576, 583 (2d Cir. 1991)).  Here, the similarity of marks and identity of customers clearly show a high potential for defendant to cause commercial injury.  Indeed, the Second Circuit has recognized that "[t]here is a compelling need for injunctive relief especially when the case involves a former licensee because, after a license has been revoked, there is an

increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder." Sunward Elecs., Inc. v. McDonald, 362 F. 3d 17, 25 (2d Cir. 2004) (citations omitted). Furthermore, even in the absence of proof of actual confusion, plaintiff can make a showing of infringement in light of how strongly the other factors favor plaintiff.

**Sophistication among consumers.** Regardless of the level of sophistication of the consumer of professional laundry products, defendant's infringing marks are likely to cause confusion. Generally, the sophistication of the consumer indicates how likely they are to be misled by the similarity of the marks. Sports Auth., Inc., 89 F.3d at 965. While consumers of professional laundry products may be more sophisticated than average retail consumers, there is no reason to believe that purchasers of professional laundry products would have any means or ability to discern that Electrolux's now-terminated long-time exclusive U.S. distributor would now be selling products that were not manufactured or approved by Electrolux, while at the same time finishing out the term of the distributorship.

Even the most sophisticated of consumers can be confused, moreover, when the advertising surrounding a mark is designed to fool them. See, e.g., Spear, Leeds, & Kellogg v. Rosado, 122 F. Supp. 2d 403, 405-406 (S.D.N.Y. 2000) (website operator found to infringe trademark by designing site to fool even sophisticated Internet users into thinking they were using the trademark owner's website). It is unlikely that any consumer would be able to distinguish the source of products when Bermil is the sole distributor of the plaintiff's professional laundry products in North America and has described the product bearing the accused mark as originating from "the entire Wascomat/Wascoclean/Viking team" to its customers. See, e.g., Les Ballets Trockadero, 945 F. Supp. at 573 (likelihood of confusion found

24

when fans of the plaintiff were targeted by the infringer and the infringer used the plaintiff's trademark in its advertising).  This factor favors Electrolux.

**Quality of the Goods.**  "The difference in the quality of the products is one of the less probative factors in a determination of likelihood of confusion."  DeBeers, 440 F. Supp. 2d at 278 (citation omitted).  The Second Circuit has "taken two approaches about the quality of the junior user's product: (1) an inferior quality product injures the senior user's reputation because people may think they come from the same source; or (2) a product of equal quality promotes confusion that they come from the same source."  Nikon Inc. v. Ikon Corp., 987 F.2d 91, 95 (2nd Cir. 1993) (citing Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 78 (2d Cir. 1988)).  Because the equipment bearing the accused mark would be sold from the same source as genuine Electrolux products, the quality of defendants' products is particularly dangerous to Electrolux's reputation because customers are likely to associate those products with Electrolux.  If defendants' products are inferior in quality to Electrolux's, the goodwill Electrolux has garnered over the years will be injured.  If defendants' products are comparable in quality to Electrolux's, confusion is likely.  At any rate, Electrolux has no control over the quality of the WASCOCLEAN-branded tumble dryers manufactured by ADC, including no control over warranty, the availability of replacement and spare parts, or any other aspect of the products. Having its trademarks subject to whatever products defendants might sell constitutes, in and of itself, irreparable harm warranting a grant of preliminary injunctive relief.  See Power Test, 754 F.2d at 95 (affirming need for preliminary injunction when franchisee was selling non-franchisor gasoline from a franchised location).  This factor thus favors Electrolux.

*        *        *

A balancing of the foregoing <u>Polaroid</u> factors strongly supports a finding of infringement. Electrolux is therefore likely to succeed on the merits of its trademark infringement claim.

### C.     Defendants Cannot Succeed on Their Purported Affirmative Defenses

Defendants seem to be operating on the basis of some fundamentally flawed belief that because Electrolux approved certain conduct many years ago, <u>ipso</u> <u>facto</u>, Electrolux must approve Defendants' new conduct now.  In this vein, in a letter to the Court dated January 18, 2007, defendants' counsel falsely asserted that there had been a "long-continuing course of conduct" in using certain infringing marks, such that Electrolux would not be entitled to relief. In addition to being factually inaccurate, as set forth in the Fact Section, above, and in the Rosvall Declaration, such a contention is irrelevant because, as the Supreme Court made clear in <u>Menendez v. Holt</u>, 128 U.S. 514, 523, 9 S. Ct. 143, 145 (1888), "relief will not be refused on the ground that, as the defendant had been allowed to cut down half of the trees upon the complainant's land, he had acquired by that negligence the right to cut down the remainder." This is a case in which plaintiff seeks only to prevent imminent future harm, not damages for any past harm, and neither laches nor acquiescence can bar the relief sought here.

### 1.     Electrolux Acted Swiftly to Protect Its Trademarks

For a defense of laches, "[i]t is hornbook law that laches consists of two essential elements:  (1) inexcusable delay in instituting suit; and (2) prejudice resulting to the defendant from such delay." <u>See</u> <u>Univ. of Pittsburgh v. Champion Prods. Inc.</u>, 686 F.2d 1040, 1044 (3d Cir. 1982) (finding that prospective relief was not barred by laches where plaintiff delayed).

Electrolux filed this action within days of learning of defendants' plan to sell WASCOCLEAN-branded tumble dryers.  <u>See</u> Rosvall Decl. ¶ 14.  The same day Electrolux filed the action, counsel for Electrolux sent defendants a letter demanding that defendants renounce

their intentions to distribute Wascoclean-branded tumble dryers.  See First Dabney Decl. Ex. 4.

Having not received a satisfactory response after seven days, Electrolux moved by order to show

cause for preliminary injunctive relief.  There has not been any delay in seeking relief.

Nor is there any prejudice to defendants.  Defendants' use of WASCOCLEAN on tumble

dryers is only at the initial stages.  See, e.g., Grotrian, 523 F.2d at 1343-44 (affirming injunction

and rejecting laches defense where defendant was not prejudiced because mere advertising to

dealers was insufficient prejudice to sustain laches defense.).  No WASCOCLEAN-branded

tumble dryers have, we believe, as of yet been distributed, no WASCOCLEAN products appear

on Bermil's website, and wascoclean.com resolves to Bermil's website.  See Rosvall Decl. ¶ 17;

Second Dabney Decl. ¶¶ 1-2 and Exhs. 1-2.  Any prior use of WASCO-formative marks ceased

at least more than five years ago.  See Rosvall Decl. ¶ 17.  There is no basis in law or logic for

Defendants' contention that any prior use requires Electrolux to permit defendants' proposed

actions now.  Indeed, the Supreme Court rejected such an argument more than a century ago.

See Menendez, 128 U.S. at 524, 9 S. Ct. at 145 ("Where consent by the owner to the use of his

trade-mark by another is to be inferred from his knowledge and silence merely, 'it lasts no longer

than the silence from which it springs.  It is, in reality, no more than a revocable license.'").

Finally, Electrolux seeks only a narrow injunction, not one that would impact defendants' ability

to sell dryers manufactured by ADC, but only one that would prohibit defendants from marking

those dryers with the accused mark WASCOCLEAN.

### 2.  Electrolux Has Not Acquiesced to Defendants' Use of WASCOCLEAN on Tumble Dryers

A defense of acquiescence requires defendants to prove that (1) plaintiff actively

represented that it would not assert a right or a claim; (2) the delay between the active

representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice.  See Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 67 (2d Cir. 2002).  This they cannot do.

At no time did Electrolux "actively represent" that it would not assert its trademark rights in connection with defendants' proposed introduction of WASCOCLEAN-branded tumble dryers manufactured by ADC.  See Profitness Physical Therapy Ctr., 314 F.3d at 67 (active consent is implied by conduct that amounts to an assurance, either express or implied, that the plaintiff would not assert his trademark rights).  To the contrary, Electrolux has specifically informed defendants that Electrolux owns WASCOMAT and the Electrolux W Device, and that Electrolux objects to defendants' attempted use of WASCOCLEAN.

Plaintiff has not given defendants permission to sell products in competition with plaintiff's products with marks similar to WASCOMAT or the Electrolux W device.  See Rosvall Decl. ¶ 16-17.  Nor can any such permission or assurance be implied from any prior "course of conduct."  As described above, any prior uses of marks that were tolerated by Electrolux ceased five or more years ago.  See Rosvall Decl. ¶ 17.  What defendants threaten to do now is not a continuation of anything done in the past, but a radical departure from the status quo.  Defendants could not have relied on such prior actions to infer that Electrolux approved the use of WASCOCLEAN now, especially in the face of Electrolux's direct statements and actions to the contrary.

## II.   ELECTROLUX WILL SUFFER IRREPARABLE HARM IF THE PRELIMINARY INJUNCTION DOES NOT ISSUE

In a trademark case, plaintiff must only establish that there is a likelihood of confusion, and hence of injury, to prove that an injunction is needed.  See, e.g., Hasbro, 858 F. 2d at 73 ("In a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm."); Church of Scientology, 794 F. 2d at 41 ("Our cases clearly say that establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm."); Standard & Poor's Corp., 683 F. 2d at 708 ("In the preliminary injunction context, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm").  As set forth above, Electrolux has overwhelmingly established a likelihood of confusion.  See Section I.B, supra.  Electrolux is therefore suffering irreparable harm which ought to be enjoined.

Defendants should not be permitted to arrogate Electrolux's goodwill and reputation. "Reputation is not calculable nor precisely compensable."  Power Test, 754 F.2d at 95.  "[A] court must find irreparable harm when the movant 'shows that it will lose control over the reputation of its trademark pending trial."  Southland Corp. v. Froelich, 41 F. Supp. 2d 227, 242 (E.D.N.Y. 1999) (granting motion for preliminary injunction) (quoting Power Test, 754 F.2d at 95 (affirming grant of preliminary injunction).

Electrolux should be granted injunctive relief because the harm it faces cannot be remedied by monetary damages.  This type of trademark infringement injury is inherently incapable of accurate or adequate quantification in monetary terms.  See Power Test, 754 F. 2d at 95.  It is well-settled that injury arising from infringement of a trade mark "can never be accurately ascertained or compensated for" in money damages.  Chips 'N Twigs, Inc. v. Chip-

29

Chip, Ltd. 414 F. Supp. 1003, 1019 (E.D. Pa. 1976) (potential harm to reputation and goodwill by clothing maker warranted a preliminary injunction regardless of whether defendant would be able to pay damages at end of trial).  The distinctiveness and image of the WASCOMAT brand and the Electrolux W Device is Electrolux's valuable asset.  It represents more than forty years of effort in the professional laundry products industry and the trust and confidence of the consumers who purchase and use Electrolux's WASCOMAT professional laundry products year after year.  See also Lois Sportswear, 799 F. 2d at 872 ("the Lanham Act was designed to prevent a competitor from such a bootstrapping of a trademark owner's goodwill by the use of a substantially similar mark").  The injunctive relief sought by Electrolux is needed to prevent irreparable and incalculable harm to this precious, but very perishable, asset.

## III.   THE BALANCE OF HARDSHIPS OVERWHELMINGLY FAVORS A GRANT OF PRELIMINARY INJUNCTIVE RELIEF

While Electrolux is highly likely to succeed on the merits of its claims, even if the Court were to conclude that Electrolux had demonstrated only sufficiently serious questions going to the merits to make them a fair ground for litigation, the balance of the hardships weighs heavily in favor of Electrolux.  See, e.g., Russian Kurier, Inc. v. Russian Am. Kurier, Inc., 899 F. Supp. 1204, 1212 (S.D.N.Y. 1995) (granting preliminary injunction and noting that balance of hardships tips decidedly in favor of plaintiff where plaintiff "has shown that it is subject to threat of irreparable harm, having shown a strong likelihood that the public will be confused" and where defendant will merely be prevented "from using a particular name . . . which [it] has adopted long after the plaintiff started to use it" in an "apparent effort to gain advantage in the marketplace competing directly against the plaintiff which had a right to use that name.") Electrolux's request for injunctive relief should still be granted.

30

**A.     Denial of Preliminary Injunctive Relief Will Result in Certain and Incalculable Damage to Electrolux's Reputation and Goodwill**

The urgency and severity of the harm facing Electrolux is evidenced in the speed with which it sought redress from the Courts. Electrolux filed suit within days of learning of defendants' wrongful plan to distribute unapproved WASCOCLEAN-branded professional laundry products.   Electrolux has moved for preliminary injunctive relief within a week following the commencement of this action after defendants failed to disavow their stated intention to use WASCOMAT, WASCOCLEAN, or the Electrolux W Device in association with unapproved third-party products.

As demonstrated in Section I, above, there is a strong likelihood of confusion if defendants are allowed to introduce WASCOLEAN-branded tumble dryers that have not been manufactured or approved by Electrolux.  This will cause Electrolux immediate and irreparable harm, as set forth in Section II, above.  Thus, the hardship to Electrolux of allowing defendants to proceed is severe.

**B.     Any Harm to Defendants From the Granting of Injunctive Relief Will Be Minimal**

Defendants, on the other hand, will be prevented only from employing WASCOCLEAN, but not from selling dryers.  See Masterfoods USA v. Arcor USA, Inc., 230 F. Supp. 2d 302, 312 (W.D.N.Y. 2002) (granting injunction and noting that "[Defendant] is not being prohibited from selling [products] in the United States, but only required not to sell them in infringing packaging."); Les Ballets Trockadero, 945 F. Supp. at 574-75 (granting injunction and noting that defendants may continue business without using infringing marks.)   Moreover, WASCOCLEAN was only adopted in an apparent effort to gain advantage in the marketplace and capitalize on the goodwill and reputation that belongs to Electrolux in the face of

31

Electrolux's termination of the Distributor Agreement, and defendants have not yet distributed any dryers bearing the accused mark and have no genuine need to use the WACOCLEAN as a trademark for non-Electrolux clothes dryers.  See Rosvall Decl. at ¶17.  The harm to them is slight.

Defendants have long been aware that they do not have the right, and that Electrolux would oppose, any use of infringing marks for the sale of products that Electrolux neither manufactured nor approved.  Electrolux explicitly retained the rights to its trademarks in the Distributorship Agreement with Bermil.  See Rosvall Decl. Ex. 3.  In the December 2003 letter by which Electrolux elected to terminate its Distributor Agreement with Bermil, it again re-affirmed that Bermil had no rights in any Electrolux trademarks.  See Rosvall Decl. Ex. 8. Finally, Electrolux again affirmed that it would object to the use of WASCOCLEAN when it filed an opposition to Defendants' application for the WASCOCLEAN trademark.  Even the minimal harm that Defendants might assert was entirely preventable and incurred by defendants' own calculated risk, and should thus be discounted.  See Sanofi-Synthelabo v. Apotex Inc., 2006 WL 2516489, at *25 (S.D.N.Y. 2006) (granting injunctive relief and noting that "[i]n short, [Defendant]'s harms were almost entirely preventable, and were incurred by the company's own calculated risk").  Moreover, any harm to defendants from the erroneous entry of an injunction could easily be provided for in a nominal bond.  The harm to defendants is minimal, and thus the balance of the hardships weighs strongly in favor of enjoining defendants.

**CONCLUSION**

For the reasons set forth above, the Court should grant Electrolux's application for a preliminary injunction.

Dated:    New York, New York
          January 24, 2007

                                        FRIED, FRANK, HARRIS, SHRIVER
                                        & JACOBSON LLP

                                        By: _____
                                            James W. Dabney (JD-5640)
                                            (A Member of the Firm)
                                            Julie E. Kamps (JK-6041)
                                            Ron Lazebnik (RL-1984)
                                        One New York Plaza
                                        New York, New York 10004-1980
                                        (212) 859-8000

                                        Attorneys for Plaintiff
                                        AB Electrolux

543967

33