James W. Dabney (JD-5640)
Julie E. Kamps (JK-6041)
Ron Lazebnik (RL-1984)
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Plaintiff
  AB ELECTROLUX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AB ELECTROLUX,

                    Plaintiff,

        - against -                      07 Civ. 199 (LAK)

                                            **ECF CASE**

BERMIL INDUSTRIES CORPORATION, AUTARKIC
HOLDINGS, INC., and NEAL MILCH,

                    Defendants.
-------------------------------------------------------------------x

## DECLARATION OF JAN ROSVALL

1. My name is Jan Rosvall. My business address is 15 Viale Treviso, Pordenone, Italy 33170. I am Chief Financial Officer of Electrolux Professional S.p.A. I have held my current position since 1997. Between 1978 and 1997, I held a similar position with Electrolux Laundry Systems Sweden AB. At all times since July 1, 1978, I have monitored business relations between AB Electrolux and related companies (collectively, "Electrolux") and defendant Bermil Industries Corporation ("Bermil"). Bermil currently is Electrolux's exclusive distributor of professional laundry equipment products in the United States and Canada. I am generally familiar with Electrolux's professional laundry systems business and the markets in which it operates. I have personal knowledge of the matters stated in this declaration.

1



2. Electrolux is one of the world's largest manufacturers of professional laundry equipment. "Professional" laundry equipment includes washing machines, tumble dryers, ironers, and related apparatus and spare parts that are sold primarily for commercial as distinct from residential home use. In the year ending December 31, 2005, Electrolux's worldwide sales of professional laundry equipment exceeded USD $300 million. Descriptions of Electrolux's professional laundry systems business appear at the Internet "web sites" associated with the domain names www.electrolux-wascator.com and http://professional.electroluxusa.com/node1359.asp. Selected "web pages" associated with the domain names www.electrolux-wascator.com and http://professional.electroluxusa.com/node1359.asp are annexed hereto as Exhibit 1. I believe that the information set forth in Exhibit 1 is true and accurate.

3. Electrolux-manufactured professional laundry equipment is exported to the United States and marketed there and in Canada under the trademarks WASCOMAT and a stylized W device (the "Electrolux W Device"). In addition, Electrolux uses the Electrolux W Device globally. Photographs of selected WASCOMAT professional laundry equipment, illustrating how Electrolux places the trademark WASCOMAT and the Electrolux W Device on exterior surfaces of Electrolux-manufactured professional laundry equipment, are annexed hereto as Exhibit 2. Electrolux has used the trademarks WASCOMAT and the Electrolux W Device to identify Electrolux-manufactured professional laundry equipment marketed in the United States continuously throughout my tenure with Electrolux since 1978. It is my understanding that through its predecessor, Electrolux-Wascator AB, Electrolux has continuously used WASCOMAT and the Electrolux W Device to identify professional laundry equipment marketed in the United States since the 1950's. It is also my understanding that Electrolux has registered WASCOMAT as a trademark for washing machines in both the United States and Canada.



4. Electrolux currently markets WASCOMAT professional laundry equipment in the United States and Canada through a two-tier distribution system. Electrolux sells and delivers WASCOMAT products directly and exclusively to defendant Bermil, a New York-based wholesale distributor; Bermil in turn re-sells WASCOMAT products to retail dealers. Electrolux and Bermil are parties to a written distribution agreement dated July 12, 1960 (the "Distributor Agreement"), which agreement has been extended and amended from time to time. Annexed hereto as Exhibit 3 are true copies of the documents that Electrolux believes to comprise the Distributor Agreement. As shown in Exhibit 3, since at least 1979, Bermil has undertaken to use its "best efforts" to market Electrolux-manufactured professional laundry equipment in preference to similar competitive equipment.

5. Bermil advertises and promotes WASCOMAT laundry equipment via, among other things, an Internet "web site" that is associated with the domain name www.wascomat.com. Annexed hereto as Exhibit 4 are copies of "web pages" that were downloaded from the Bermil "web site" on January 21, 2007. As is shown in Exhibit 4, the Bermil "web site" is headed "Wascomat Laundry Equipment" with a replica of the Electrolux W Device and the word Wascomat in the form that Electrolux places those marks on professional laundry equipment that is sold to Bermil for distribution in the United States and Canada. As nearly as I can determine, the Bermil "web site" currently advertises only Electrolux-manufactured professional laundry equipment with the exception of certain add-on accessories.

6. As is also shown in Exhibit 4, Bermil promotes the WASCOMAT range of professional laundry equipment in part by use of a trade name that includes the word WASCOMAT and also by highlighting Electrolux's long history of innovation and delivery of quality products. Bermil refers to Electrolux as "[t]he world's leading manufacturer of commercial laundry equipment for self-service coin laundries" (see

3



Exhibit 3) and states, "Wascomat state-of-the-art, water, energy, gas and labor efficient washers, dryers and flatwork ironers are the standard of quality for over 100 years " (id.).

7. Electrolux places on each WASCOMAT washer and dryer a label or plate bearing a unique Electrolux-assigned serial number and various manufacturing and technical information. Exhibit 5 hereto depicts a specimen of a serial number label of the type that Electrolux has placed on all WASCOMAT clothes washers and dryers since at least 1978. The Electrolux W Device and the WASCOMAT trademark appear on serial number labels and plates that Electrolux has placed on WASCOMAT clothes washers and clothes dryers from time to time since at least 1978.

8. Electrolux also prepares and distributes user and operating manuals for WASCOMAT laundry equipment and places such manuals in the drums of WASCOMAT washers and dryers prior to their shipment to the United States. Annexed hereto as Exhibit 6 is a specimen WASCOMAT clothes dryer operating manual. The format and contents of Exhibit 6 are typical of WASCOMAT operating manuals that Electrolux has been shipping with WASCOMAT professional laundry equipment since approximately 2002, which marked the 100th anniversary of Electrolux's predecessor's start in the professional laundry equipment business. I believe that the first two and the last two pages of Exhibit 6 consist of material that Bermil has supplied to Electrolux for inclusion in WASCOMAT product operating manuals.

9. By reason of many years of continuous product development, sales, marketing, and promotional activity, the WASCOMAT trademark and the Electrolux W Device represent assets that Electrolux believes have enormous goodwill and selling power in the United States market for professional laundry products.

10. According to Electrolux business records, since 1978, Electrolux has manufactured, sold, and exported to the United States more than USD $600 million in WASCOMAT professional laundry equipment. I believe that all of the equipment sales

4



reflected in this figure were made under the trademarks WASCOMAT and the Electrolux W Device exemplified by the marks shown in Exhibits 2, 4, and 5 hereto.

11. Electrolux engages in continuous efforts to improve WASCOMAT professional laundry products, including their efficiency in use of water and energy. I believe that the sales success of WASCOMAT products in the United States reflects the high quality that Electrolux builds into the products, the relative energy efficiency of WASCOMAT products as compared with rival products, post-sale support that Electrolux provides in the furnishing of spare parts for WASCOMAT products, and the strong manufacturer's warranty coverage that Electrolux extends to purchasers of WASCOMAT products. I have been informed that some WASCOMAT professional laundry products have been in commercial service for more than 20 years.

12. As shown in Exhibit 3, the Distributorship Agreement between Electrolux and Bermil was amended in 1988 to provide that it could be terminated upon the giving of seven (7) years prior written notice. By letter dated December 3, 2003, Electrolux notified Bermil that the Distributorship Agreement would be terminated effective December 31, 2010. A copy of Electrolux's December 3, 2003, letter to Bermil is annexed hereto as Exhibit 7.

13. In 2005 and 2006, Electrolux and Bermil held fruitless discussions with regard to terminating the Distributorship Agreement earlier than 2010. Those discussions concluded with a letter from Electrolux to Bermil dated June 20, 2006. A copy of Electrolux's June 20, 2006, letter to Bermil is annexed hereto as Exhibit 8.

14. On or about January 4, 2007, a United States dealer in WASCOMAT professional laundry products called Electrolux's attention to the Bermil communication dated December 20, 2006, annexed hereto as Exhibit 9 (the "December 20 Letter"). The December 20 Letter was issued without Electrolux's knowledge or approval. Electrolux has no knowledge of any arrangement between Bermil and American Dryer Corporation



("ADC") with respect to the manufacture or distribution of "Wascoclean-branded tumble dryers" as stated in Exhibit 9. ADC is a competitor of Electrolux in the United States market for professional laundry products. Electrolux commenced the present action within days of learning of Bermil's proposed use of WASCOCLEAN as described in the December 20 letter.

15. Based on my knowledge and experience as set forth above, I believe Bermil's proposed use of WASCOCLEAN as a trademark for tumble dryers is highly likely to cause United States customers to believe, falsely, that such dryers are sponsored or approved by Electrolux, owner of the WASCOMAT brand. End users of professional laundry products, in my experience, generally have only the name of a product to go by when considering its origin. Users or even purchasers of WASCOCLEAN-branded clothes dryers will have no way of knowing that the design, quality, or performance of such dryers may be significantly different from that of WASCOMAT clothes dryers, as may be the nature and quality of post-sale support and warranty service.

16. I have read the letter dated January 18, 2007, from attorney Meyer A. Gross to Judge Kaplan which states that in years past, Electrolux gave "approval" to Bermil's use of WASCOCLEAN and WASCODRY, and suggests that Electrolux is objecting to a "long-continuing course of conduct." In fact, Electrolux has, to my knowledge, never "approved" of any conduct by Bermil that is in any way similar to what Bermil is now proposing to do.

17. Many years in the past, Electrolux did not object to Bermil's use of variants of the WASCOMAT mark, including WASCOCLEAN and WASCODRY, to identify certain types of machines that Electrolux did not manufacture for the United States market at the time; however, these uses required Electrolux's approval (which was given) and, equally importantly, these uses were discontinued many years ago when Electrolux commenced the manufacture of comparable equipment which Bermil now markets and



sells under the WASCOMAT brand. I am not aware of any use of WASCOLEAN or WASDODRY to identify professional laundry products that has occurred in at least the past five (5) years. As of January 22, 2007, I was unable to find any reference to any WASCOCLEAN or WASCODRY products on the Bermil "web site" depicted in Exhibit 4 hereto.

18. Electrolux's competitors in the United States market for professional laundry equipment use names that are completely different from WASCOMAT. Some of these are SPEED QUEEN, MAYTAG, MILNOR, DEXTER, CONTINENTAL, PRIMUS, IPSO, BRAUN, and ADC, the latter being the mark of an Electrolux competitor that the December 20 Letter identifies as the manufacturer of the dryers that Bermil apparently has proposed to sell under the name WASCOCLEAN.

19. Bermil's announced plan to market ADC-manufactured dryers under the mark WASCOCLEAN represents a substantial departure from any activity that Electrolux has ever approved in the past. First, Bermil is proposing to use WASCOCLEAN to identify a type of professional laundry equipment that Electrolux currently supplies to Bermil and Bermil currently sells under the WASCOMAT mark. Second, defendant Bermil is proposing to use WASCOCLEAN to identify a line of professional laundry products over Electrolux's objection, not with Electrolux's approval. Third, Bermil is proposing to use WASCOCLEAN in manner that is openly hostile to Electrolux and Electrolux's rights in the WASCOMAT mark. I understand that defendant Autarkic Holdings, Inc. ("Autarkic") has sought registration of WASCOCLEAN and the Electrolux W Device as trademarks purportedly owned by Autarkic, based on Bermil's past use of those marks as an authorized WASCOMAT distributor. Electrolux has never approved of Autarkic's use of any marks used in association with WASCOMAT professional laundry equipment.

20. I believe that Bermil's threatened use of WASCOCLEAN is likely to cause harm to the WASCOMAT trademark and brand identity that would be impossible to



quantify accurately or adequately in monetary terms. Electrolux has no control over the quality, pricing, support, or warranties of the dryers that Bermil is proposing to sell under the WASCOCLEAN mark. I believe that consumer perceptions of WASCOCLEAN-branded tumble dryers would inevitably affect consumer perceptions of WASCOMAT professional laundry equipment, especially to the extent that Bermil proposes to sell both while using WASCOMAT in its trade name.

I, JAN ROSVALL, hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 24, 2007


Jan Rosvall

544393