UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AB ELECTROLUX,

                   Plaintiff,

             -against-                                     07 Civ. 0199 (LAK)

BERMIL INDUSTRIES CORPORATION, et al.,

                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

Appearances:

> James W. Dabney
> Julie E. Kamps
> Sarah R. Krissoff
> Ron Lazebnik
> FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
> *Attorneys for Plaintiff*

> Loretta M. Gastwirth
> Jason K. Blasberg
> MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

> Jay Bondell
> SCHWEITZER, CORNMAN, GROSS & BONDELL, LLP

> *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge*.

        Plaintiff seeks a preliminary injunction to restrain its American distributor from

infringing the trademarks under which plaintiff has sold its goods in the United States by selling competitive products under those marks.  Likelihood of confusion is not seriously disputed. Defendants contend instead that relief should be denied because plaintiff has acquiesced in its activities or abandoned its marks.

I

*A.    Background*

Since 1960, Bermil Industries Corporation ("Bermil") has been the exclusive American distributor for AB Electrolux ("Electrolux"), a Swedish manufacturer of professional laundry equipment.[1]  The current distribution agreement expires in 2010, and Electrolux has informed Bermil that it will not be renewed.[2]  Regrettably, certain aspects of the parties' relationship never have been clarified.  As the end of the relationship nears, this litigation commenced over their respective rights.  The dispute focuses on two specific trademarks.  The first is a stylized, wavy "W" called the "Flying W" by Bermil and the "Electrolux W Device" by Electrolux.  In the interest of neutrality, the Court will call it the "Wavy W."  The second is Electrolux's registered, incontestible

---

[1]

Rosvall Decl. ¶ 4.  The 1960 agreement between the parties has been extended and modified several times.  The parties' submissions of the purportedly complete agreement are slightly different, *compare* Rosvall Decl. ¶ 4 & Ex. 3 *with* N. Milch Decl. ¶¶ 14, 17 & Exs. 4-5, but the differences are immaterial for present purposes.

From 1960 until 1973, the manufacturer was a different Swedish company.  In 1973 Electrolux bought the company and assumed the obligations of the distributorship agreement.  For convenience, I will use Electrolux to refer to both Electrolux and its predecessor.

[2]

Rosvall Decl., Ex. 7.  Attempts to terminate the relationship prior to 2010 proved unsuccessful.  *Id.* ¶ 13 & Ex. 8.

3

mark WASCOMAT.

Over the decades, Bermil has sold Electrolux's washing machines and other products under the WASCOMAT  and Wavy W marks.  It has sold also products manufactured by third parties with the Wavy W mark and a name that uses a "Wasco" prefix, such as Wascoclean or WascoDry.  The parties dispute whether Electrolux approved these uses of the marks.  In any case, however, with very few exceptions, Bermil's use of Wasco prefix marks on products of other manufacturers have occurred only on items as to which Electrolux did not manufacture a competing product.

Bermil currently sells Electrolux-manufactured WASCOMAT dryers.  Recently, however, it decided to sell also, under the name Wascoclean, dryers manufactured by an Electrolux competitor.[3]  Electrolux promptly brought this action for trademark infringement and unfair competition on the grounds that (1) defendants' use of the name Wascoclean to identify professional laundry products that were not manufactured or approved by Electrolux infringes Electrolux's registered WASCOMAT trademark, (2) defendants' use of the Wavy W infringes Electrolux's mark, and (3) defendants' use of the Wasco prefix and the Wavy W constitutes unfair competition.

On January 25, 2007, the Court issued a temporary restraining order enjoining defendants from using "(a) the marks WASCOMAT, WASCOCLEAN, WASCODRY, (b) any other mark containing WASCO, and (c) the Electrolux W Device, in each case on or in connection with professional laundry products not manufactured or approved by plaintiff."[4]

---

[3]    Dabney 1st Decl. (1/17/07), Ex. 3; Cpt. ¶ 11.

[4]    Order, Jan. 25, 2007 (docket item 17).

4

II

*A.      Preliminary Injunction Standard*

"A party seeking injunctive relief ordinarily must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."[5]   In addition, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief."[6]

*B.      Likelihood of Success on the Merits*

To succeed on its claims for trademark infringement under the Lanham Act, Electrolux must establish that the marks are entitled to protection and that Bermil's proposed use is likely to cause consumer confusion as to the origin or sponsorship of Electrolux's products.[7]

*1.      Entitlement to Protection*

The first inquiry, whether the marks are entitled to protection, here hinges on whether

---

[5]
    *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995); *see also D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006).

[6]
    *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999); *see also Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006).

[7]
    *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

Electrolux has established ownership of the marks.[8]


       *a.*     *WASCOMAT*

Electrolux is the undisputed owner of the U.S. trademark WASCOMAT as applied

to washing machines, registered in 1962.[9]  The WASCOMAT mark therefore is entitled to protection

for professional laundry equipment.[10]


       *b.*     *The Wavy W*

The parties dispute the ownership of the Wavy W.  Defendant contends that its

founder, Bernard Milch, first formulated it.[11]  In determining ownership of a trademark, however,

creation or invention of the mark is irrelevant.  The critical question is which party first used the

mark in the sale of goods or services.[12]

---

[8]
    There is no dispute that the Wavy W and the word "Wascomat" are inherently distinctive.

[9]
    Dabney 1st Decl. (1/17/07), Ex. 1; Dabney 2d Decl. (1/23/07) ¶ 8 & Ex. 7.

[10]
    *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976) ("Absent equities in the junior user's favor, he should be enjoined from using a similar trademark whenever the non-competitive products are sufficiently related that customers are likely to confuse the source of origin.").

[11]
    B. Milch Decl. ¶ 7.

[12]
    2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (hereinafter, "MCCARTHY ON TRADEMARKS") § 16:11 (4th ed.) ("[R]ights in trademarks are not gained through discovery or invention of the mark, but only through actual usage. . . . To acquire ownership of a trademark, one must actually use the mark in the sale of goods or services.").

i.    *Prior use of the Wavy W*

The parties argue different standards to determine "use."  Electrolux argues that use is established by physical affixation of the mark to goods in commerce; Bermil contends that use in advertising and marketing suffices.

"A designation is 'used' as a trademark . . . when the designation is displayed or otherwise made known to prospective purchasers in the ordinary course of business in a manner that associates the designation with the goods, services, or business of the user."[13]  Although direct physical affixation to goods is the traditional manner of establishing priority of use, the modern trend is to recognize that use in advertising or other marketing materials can establish the identification of the mark with the user and put others on notice of the user's potential rights.[14]  The question thus becomes which party's use first established consumers' identification of the Wavy W with that party.[15]

---

[13]

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 18 (1995).

[14]

*See id.* cmt. d ("[U]se of a mark on point of sale displays, price lists, menus, or mail solicitations can . . . constitute use as a trademark, as can other advertising uses calculated to inform prospective purchasers of the association between the designation and the user or the user's goods and services."); 2 MCCARTHY ON TRADEMARKS § 16:23 (exclusive physical affixation rule "is no longer in keeping with modern advertising methods where media advertising may make a greater impression on buyers than symbols physically imprinted on a package or label").

[15]

*See T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372, 1375-76 (Fed. Cir. 1996) (in determining whether prior use sufficient to defeat application for registered trademark, court analyzed distribution and circulation of marketing materials displaying trademark to determine whether use was "of such a nature and extent as to create public identification of the target term with the opposer's product or service" and concluded, inter alia, that "brochures and news articles . . . were not shown to have been so broadly or repetitively distributed that one could reasonably infer that the consuming public came to identify" the mark with the opposing party).

Unfortunately, the relevant evidence is sparse.  Bernard Milch testified at his deposition that he sent Electrolux a drawing of the Wavy W, that Electrolux affixed the mark to WASCOMAT machines, and that such affixation by Electrolux continues to the present day.[16]  The date of the first affixation is unclear, though it appears to have been in the 1960s.  Affixation of the mark to the product clearly identifies the goods with the user to the consuming public, so if this affixation was the first usage, Electrolux is the senior user.

Bermil argues, however, that it used the mark in marketing materials in manner sufficient to identify the mark with its distributorship and repair service before Electrolux affixed the Wavy W to its equipment.  Both sides have submitted a scattering of brochures, manuals, advertisements, and letterhead displaying the Wavy W.  But only a few of the documents have identifiable dates, and there is no evidence of the manner or extent of circulation of any document. On this record, neither party has established use of the mark in marketing or advertising materials before Electrolux's first affixation.  Further discovery may or may not remedy this weakness of the evidence – few individuals actually present at the relevant time appear to be available to testify, and if corporate records existed they likely would have been discovered by now.  Electrolux thus appears likely to establish prior use of the Wavy W.

ii.      *The Diamond W*

Defendants offer a second theory in support of their ownership of the Wavy W mark.

---

[16]
B. Milch Dep. 19-21.

8

They assert that Bermil used and owned a "Diamond W" mark prior to creating the Wavy W.[17]  They argue that Bermil modified and modernized this Diamond W mark into the Wavy W.[18]

Defendants could defeat Electrolux's ownership claim over the Wavy W mark upon a showing that (1) Bermil owned the Diamond W mark prior to Electrolux's first affixation of the Wavy W, and (2) the Wavy W is a modernization of the Diamond W mark.[19]

Bermil's evidence of its use of the Diamond W is no better than its evidence for the Wavy W. The Court is not persuaded from the scant proof that the Diamond W mark existed before Electrolux first affixed the Wavy W to its equipment.

Even if Bermil had demonstrated a likelihood of establishing prior use of the Diamond W mark, defendants nevertheless would be obliged to establish that "the new and old forms [i.e., the Diamond W and the Wavy W] create the same, continuing commercial impression."[20] Courts have looked at the resemblance of the old and new forms to determine whether they constitute

---

[17]

B. Milch Decl. ¶ 6.

[18]

B. Milch Decl. ¶ 7.

Electrolux does not claim ownership or use of the Diamond W mark at any time.

[19]

*Dreyfus Fund Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 1115 (S.D.N.Y. 1981) (quoting *Ilco Corp. v. Ideal Sec. Hardware Corp.*, 527 F.2d 1221, 1224 (C.C.P.A. 1976)) ("The law permits a user who changes the form of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create the same, continuing commercial impression.").

[20]

*Id.*; *see also* 3 McCarthy on Trademarks § 17:28 ("Modernization of a logo, trademark style or trade dress which retains the commercial impression of the previous version does not result in any abandonment or loss of priority in the mark."); 3 Callmann on Unfair Comp., Tr. & Mono. § 20:73 (4th ed.) ("[T]he test is whether the mark makes the same general commercial impression after the change as it did before.").

such a continuing commercial impression.  For example, a lion drawing constituted a modernization of a realistic lion where "[t]he drawing strongly resembles the realistic lion [used] in the TV ads."[21]

The Diamond W is an angular, sharp symbol that looks like three diamonds enclosed by a circle.[22]  The Wavy W has soft edges and looks like a ribbon with ripples.[23]  The overall effect of the two marks is entirely different, and neither looks particularly like a W.  The Court's initial comparison of the two marks leaves it doubtful that they create a continuing commercial impression.

Accordingly, the Court finds that defendants are unlikely to succeed in establishing priority based on the Diamond W.

### 2.    *Likelihood of Confusion*

It cannot seriously be contested that defendants' use of the Wavy W and of "Wasco" prefix names on professional laundry equipment manufactured by parties other than Electrolux will cause confusion.  Indeed, defendants do not dispute this, at least with any degree of seriousness.  A cursory look at three of the *Polaroid*[24] factors demonstrates why.

---

21

*Dreyfus Fund*, 525 F. Supp. at 1115; *see also Veryfine Prods. v. Colon Bros., Inc.*, 799 F. Supp. 240, 255 (D. P.R. 1992) (addition of a "thin white line," "slightly different position[ing]," and "minor color changes" constitute same commercial impression); *Times Newspapers, Ltd. v. Times Pub. Co.*, 1993 WL 120614, at * 4 (M.D. Fla. Jan. 13, 1993) ("The Tampa Times(g), " "THE TAMPA TRIBUNE and Times(g)," and "THE TAMPA TRIBUNE and The Tampa Times(g)," create same commercial impression).

22

*See* N. Milch Decl., Ex. 6.

23

*See* Pl.'s Mem. 3.

24

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).

Strength of the marks: Strong marks are those which are "arbitrary or fanciful in relation to the products . . . on which they are used . . . [and are not] generic, descriptive or suggestive as to those goods."[25]   The Wavy W is a highly stylized, distinctly shaped W. WASCOMAT is a meaningless, made-up word.  Neither mark has an intrinsic relation to the sale of professional laundry equipment.  In consequence, plaintiff's marks are quite strong.

Similarity: The Wavy W defendant seeks to use is identical to Electrolux's mark.  The prefix Wasco tacked onto the beginning of a syllable is unique and noticeable.  It makes Wascoclean, for example, very similar to WASCOMAT.

Proximity of the products: The parties both sell professional laundry equipment.  The genesis of this lawsuit was Bermil's proposal to sell professional dryers under the name Wascoclean while simultaneously selling Electrolux's professional dryers under the name WASCOMAT.  The products for present purposes are identical.

No amount of consumer sophistication would suffice to overcome these facts.  I find that use by defendants of Wasco prefix names or the Wavy W in connection with laundry equipment is likely to cause confusion.  Nor have defendants established that the use of a disclaimer would eliminate this strong probability.[26]

---

[25]

Virgin Enters., 335 F.3d at 147.

[26]

"Where, as here, an infringer attempts to avoid a substantial likelihood of consumer confusion by adding a disclaimer, it must establish the disclaimer's effectiveness." Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 143-44 (2d Cir. 2005).

3.      *Defenses*

Defendants argue that Electrolux has abandoned the marks or, in the alternative, has acquiesced in Bermil's use of them on competing products.

a.      *Abandonment*

A trademark owner will be considered to have abandoned its marks by licensing them to another without adequate control over the quality of the products sold under the marks.[27] "[A]bandonment, being a forfeiture of a property interest, should be strictly proved."[28]

In the first instance, Electrolux denies that it licensed the marks to Bermil. Defendants argue that it implicitly did so by approving Bermil's use of the marks on products manufactured by third parties.

There certainly was no license, implicit or otherwise, of the WASCOMAT mark on defendants' theory for the simple reason that defendants do not claim ever to have sold non-Electrolux equipment under that mark. While they did sell non-Electrolux equipment under other names beginning with the Wasco prefix, Electrolux does not claim ownership of a Wasco prefix mark. In consequence, the most that can be said is that Electrolux acquiesced in an arguably infringing use, not that it implicitly licensed WASCOMAT for use on non-Electrolux equipment.

The Wavy W may be another matter, as Electrolux claims ownership of that mark, and Bermil certainly used it on non-Electrolux equipment. But it ultimately is unnecessary to

---

[27]     *See* 3 McCarthy on Trademarks § 17:6.

[28]     *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980).

12

determine whether a license to do so should be inferred.

Assuming *arguendo* that an implied license existed, defendants would be likely to prevail on their abandonment claim only if Electrolux failed to exercise adequate control over Bermil's use of its marks.  Defendants argue that Bermil long has used the Wavy W and Wasco prefix on professional laundry equipment manufactured by third parties.  It has submitted various brochures and manuals, largely undated, of such products,[29] and Electrolux clearly was aware of at least some of these.[30]

Electrolux concedes that it exercised no quality control over these products.  Its vice president of manufacturing testified that Electrolux "knew that Bermil had other products to fulfill the market need and we approved doing that because it was a benefit for both companies. . . . The only control I know is that we trusted this organization of picking the right equipment in [sic], because both companies were interested in having successful development on the market. . . . We trusted them to put in the right equipment in their product, including colors, quality, size and so forth."[31]

Defendants thus have put forth evidence indicating some failures to control.  In light of the entire scope of Bermil's use of the marks, however, it is not clear that defendants will show a sufficient lack of control.  "[I]f the uncontrolled use continues only for a short time, or represents only an insignificant proportion of the total use of the mark, a court will not ordinarily find

---

[29]    N. Milch Decl., Exs. 12, 19, 21-25, 27-34; B. Milch Decl. ¶ 8.

[30]    Rosvall Dep. 103.

[31]    Nordholm Decl. 102-03.

abandonment."[32]   For example, one case involving the Jaycees trademark noted that the national organization, "although revoking the charters of several chapters that have violated its bylaws limiting membership to men, apparently has allowed other violators to remain affiliated."[33]   The court concluded, however, that "we do not believe that a delay, even of several years, in revoking charters or pressing trademark infringement claims, constitutes a loss of control sufficient to prove abandonment."[34]

Here, Electrolux clearly exercised control over the machines it manufactured and sold to Bermil.  The lack of control was only over the use of the marks in connection with other products not manufactured by Electrolux.  The record is incomplete as to the full scope of this lack of control – how many products of what type were sold by Bermil for how long – but in any event, the primary product associated with the marks always was manufactured by, and thus under the control of, Electrolux.

It seems clear that Electrolux did not exercise complete control over the use of its purported marks.  On the present record, however, it seems likely that defendants will not be able to meet their burden of proving abandonment.

b.    *Acquiescence*

The defense of acquiescence, related to the defense of laches, requires a defendant

---

[32]   RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 33 cmt. b.

[33]   *U. S. Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 140 (3d Cir. 1981)

[34]   *Id.*

14

to show (1) a representation by a senior user that it would not assert a right, (2) an inexcusable delay

between that representation and the assertion of the right, and (3) consequential prejudice.[35]  Both

defenses "turn on 'a consideration of the circumstances of each particular case and a balancing of

the interests and equities of the parties.'"[36]

Electrolux asserts that it never actively represented it would not protect its marks,[37]

and defendants offer no evidence of any such active representation.  They argue instead that

Electrolux's failure to object to their use of Wasco prefix names and the Wavy W on non-Electrolux

equipment amounted to an implicit representation.

Electrolux concedes that Bermil has used the Wavy W and Wasco prefix names on

non-Electrolux manufactured professional laundry products in the past.[38]  It argues, however, that

these uses were limited to equipment of types that Electrolux did not then manufacture and that they

always ceased when Electrolux began to manufacture competing products.  Moreover, it points out

that there have been no such uses for the past five years.[39]  It points further to express assertions of

its rights in the WASCOMAT trademark in a 1979 agreement between the parties and in a 2003

---

[35]

*Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67-68 (2d Cir. 2002).

[36]

*Profitness*, 314 F.3d at 67 (quoting *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 703 (2d Cir. 1970)).

[37]

Rosvall Decl. ¶ 16.

[38]

*Id.* ¶ 17.

[39]

*Id.*

letter noticing its intent to terminate the distributorship agreement.[40]

Bermil's equitable argument is not entirely baseless.  It spent decades building up goodwill in the contested marks, apparently with considerable success.  Electrolux did not object to Bermil's uses of the marks on non-Electrolux equipment because it clearly benefitted from them. It aided its exclusive U.S. distributor in offering a full product line at a time when Electrolux was not able to manufacture all of the necessary products.[41]  Thus, to whatever extent the use of the Wasco prefix and the Wavy W caused confusion, that confusion was desirable to both Bermil and Electrolux.  Electrolux's failure to object, while perhaps not the act of a trademark-sophisticated business, was entirely understandable.

But this is precisely the problem with defendants' argument.  Bermil was well aware of the fact that Electrolux did not object to its use of Wasco prefix names and the Wavy W on non-Electrolux equipment only when (a) that equipment was of a type that Electrolux did not then manufacture, and (b) the use benefitted Electrolux by enabling Bermil to sell the machines that Electrolux did make as part of a full line.  There was no reasonable basis, however, for Bermil to infer that Electrolux had acquiesced or would acquiesce in Bermil using Electrolux's marks, or confusingly similar designations, to sell non-Electrolux products in competition with Electrolux. In consequence, even accepting defendants' point that Electrolux's failure to object was tantamount to a representation that Electrolux would not enforce its rights, the representation was not qualified. It was a representation only that it would not enforce its rights with respect to the sale of equipment

---

[40]

       *Id.* Exs. 3 & 7; N. Milch Decl. ¶ 34 & Ex. 17.

[41]

       *See* Nordholm Dep. 59-60.

of a type that Electrolux did not make where non-enforcement benefitted Electrolux by enabling Bermil to sell the equipment that Electrolux did make as part of a full line.  Defendants were not justified in taking it as indicating anything more.  Accordingly, defendants have not made a sufficient showing that Electrolux acquiesced in the use of the marks in such a way as to preclude enforcement in the circumstances now in question.

* * *

In sum, Electrolux has established a likelihood of success on the merits.  At a minimum, it has shown the existence of serious questions going to the merits that make fair ground for litigation.

## C.   Irreparable Harm

"In an action for trademark infringement, where a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits."[42]  As discussed above, the likelihood of confusion is clear.  Electrolux therefore has established the requisite threat of irreparable harm.

## D.   Balance of the Hardships

In view of Electrolux's likelihood of success on the merits, it is unnecessary to consider the balance of hardships.  I nevertheless do so against the possibility that a reviewing court

---

[42]      Virgin Enters., 335 F.3d at 146.

might regard this as a closer case.  In considering the balance of hardships, moreover, it is helpful to consider the harm that would befall each of the parties were the ruling on this motion ultimately to prove incorrect or inequitable.

Here, defendants have devoted a lot of time and energy to promoting the WASCOMAT and the Wavy W marks and have used them on products other than those made by Electrolux.  They are, moreover, attempting to prepare for the end of their Electrolux distributorship in 2010.  If in fact they are entitled to use Wasco prefix names and/or the Wavy W on equipment of non-Electrolux manufacture, they would be materially injured if they were wrongly enjoined from doing so during the pendency of this litigation.

Electrolux too has substantial interests at stake.  It has developed an extensive U.S. business for professional laundry equipment sold under the WASCOMAT name and in connection with the Wavy W.  The denial of a preliminary injunction would allow defendants to create a good deal of confusion as to the source of products bearing the Wavy W and/or names similar to WASCOMAT.  If Electrolux's rights in fact prove, after trial, to be exclusive as to Bermil, it would be impossible to undo the damage that had been done.  Electrolux would be faced with the need to reestablish its identity in this market.  To be sure, Electrolux in the past was not so fastidious about its identity, allowing Bermil to sell non-Electrolux products under Wasco prefix names when that served Electrolux's interest.  And that to some degree undermines its equitable position.  But that ceased for all practical purposes five years ago, and I must take the facts as I find them.

Given the serious harm that would befall either party were it to lose on this motion, the balance of hardships is in something approaching equipoise.  Absent a strong likelihood of success on the part of Electrolux, I normally would be inclined to deny a preliminary injunction in

18

comparable circumstances.  But I would not do so here for another reason.  The public interest would tip the balance in favor of plaintiff.

Bermil's website currently advertises only Electrolux-manufactured professional laundry equipment and has done so for at least the past two years.[43]  Bermil concedes that for the past five years, it has not sold Wascoclean washers or dryers.[44]  It appears that Bermil, with one limited exception,[45] has not used the Wasco prefix on professional laundry equipment manufactured by third parties for the past five years.  Hence, for the past five years consumers have associated professional laundry equipment marked by the Wavy W and Wasco prefix with Electrolux.  Regardless of confusion in the past, the market has been free of confusion for five years.  Thus, the public interest embodied in the Lanham Act itself – "the public's interest in not being misled"[46] – would be sufficient to tip the balance in favor of Electrolux even if its likelihood of success were lower than I believe.

III

Rule 65(c) provides that  "[n]o restraining order or preliminary injunction shall issue

---

[43]

Rosvall Decl. ¶ 5; N. Milch Dep. 27-28.

[44]

Dabney 3d Decl. (3/5/07), ¶ 10 & Ex. 35.

[45]

When Electrolux began to manufacture dryers and to sell them through Bermil, Bermil sold off its remaining inventory of dryers manufactured by third parties.  *See* Rosvall Decl. ¶¶ 5, 17; Dabney 3d Decl. (3/5/07) ¶ 11 & Ex. 36; Tr. (3/12/07) 21-22; N. Milch Decl. ¶ 44.

[46]

*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996) (quoting *Scarves By Vera, Inc.*, 544 F.2d at 1172).

19

except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  "In fixing the amount of security required, a court is not required to order security in respect of claimed economic damages that are no more than speculative. Moreover, the burden is on the party seeking security to establish a rational basis for the amount of the proposed bond."[47]

Defendants seek a substantial bond.  Their counsel represented at the hearing that Bermil's dryer sales, presumably of non-Electrolux equipment that they hoped to sell under Wasco prefix names, "could be somewhere near $10 million."[48]  They asserted that $3 to $5 million was a "[m]easure of lost profits and potential lost sales."[49]  But they offered no basis for that supposition.

The proposed injunction would not prohibit Bermil from selling dryers manufactured by a third party as long as it does so without using the identified trademarks and names.[50]  However, both parties have emphasized the goodwill attached to the trademarks, and Bermil will lose its ability to profit from that goodwill for dryers manufactured by third parties.  In the absence of any more coherent basis for fixing security, the Court fixes the amount at $350,000.

---

[47]

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 556 (S.D.N.Y. 2006) (footnotes and citations omitted).

[48]

Tr. (3/12/07) 33.

[49]

*Id.*

[50]

It also does not prohibit Bermil from selling Electrolux-manufactured WASCOMAT dryers, although there is evidence of delays in delivery time for these dryers.

20

21

IV

Plaintiff's motion for a preliminary injunction is hereby granted.  Accordingly:

1.     Defendants are hereby enjoined and restrained, pending the determination of this action, from using (a) the names or marks WASCOMAT, WASCOCLEAN, WASCODRY, (b) any other name or mark containing WASCO, and (c) the Wavy W, in each case on or in connection with professional laundry products not manufactured or approved by plaintiff.

2.     This preliminary injunction shall be effective immediately.  It shall expire at 6:00 p.m. on April 9, 2007 unless plaintiff by that time shall have posted bond or given other security satisfactory to the Court in the amount of $ 350,000.

The foregoing contain my findings of fact and conclusions of law.

SO ORDERED.

Dated:          April 2, 2007
Issued at:      10:30 a.m.


_____
                Lewis A. Kaplan
                United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)